## McADAMS v. STATE.

(No. 815; Decided June 22nd, 1915; 149 Pac. 550.)

APPEAL AND ERROR—EXCEPTIONS—CRIMINAL LAW—STEALING OF
LIVE STOCK—FELONIOUS INTENT—EVIDENCE OF LARCENY—OWNER'S
NONCONSENT—MOTION FOR DIRECTED VERDICT—BILL OF EXCEPTIONS
—REVIEW OF INSTRUCTIONS GIVEN OR REFUSED.

1. In a prosecution for larceny of horses, evidence *held* sufficient to carry the case to the jury on the question of felonious intent to deprive the owner of his property.
2. In a prosecution for larceny, where the facts in evidence warrant the reasonable inference that the property was taken without the consent of the owner, a conviction will not be set aside for want of proof of such fact.
3. In a criminal case, in order to entitle an exception in the matter of giving or refusing to give an instruction, to consideration, the instruction and exception must be carried directly, and not alone by way of recital in the motion for a new trial, into the bill of exceptions.

ERROR to the District Court, Weston County; HON. CARROLL H. PARMELEE, Judge.

William McAdams was convicted of the crime of larceny and brings error.

The facts are stated in the opinion.

*Allen G. Fisher* and *William P. Rooney,* for plaintiff in error.

The information did not state a crime punishable by the laws of the state. The witness, Yemington, by his own admissions, was an accomplice and his testimony was not corroborated upon any material fact essential to constitute the crime of larceny; there was no proof that the taking by defendant was with felonious intent to steal. Yemington de-

livered the property to defendant upon a public highway in the daytime. The essential ingredients are asportation, nonconsent of the owner, and the felonious intent to convert the stolen property to defendant's use. (LaDeaux v. State, 74 Neb. 19; Cohoe v. State, 79 Neb. 188; Mead v. State, 25 Neb. 444.) There was no proof that the taking was with the consent of the owner. (1 Phillips on Evidence (5th Ed.), 635; Horton on Criminal Evidence, Sections 623, 625, 632, 673 and 862; Bubster v. State, 33 Neb. 664: Perry v. State, 44 Neb. 414.) The court erred in failing to instruct concerning the effect of possession of the property. (Dobson v. State, 46 Neb. 250.) The court erred in failing to define and to show the necessity of proof of felonious intent. Such an instruction was requested and refused. (Dobson v. State, 61 Neb. 584; Barnes v. State, 40 Neb. 545.) This was prejudicial even though another instruction may include the element omitted in the one by which the court attempts to state the essential ingredients. (Richards v. Halstead, 44 Neb. 606; Barr v. State, 45 Neb. 458.) The court did not caution sufficiently against the testimony of an accomplice. (Lamb v. State, 40 Neb. 316; Home Fire Insurance Co. v. Decker, 55 Neb. 349; Sandage v. State, 61 Neb. 242; Kastner v. State, 58 Neb. 767.) There was a variance between the allegation of ownership and the proof. The court should have cautioned the jury to scrutinize more closely the testimony of informers, detectives and other persons interested, than the testimony of persons wholly disinterested. (State v. Miller, 9 Houston (Del.) 564; Clark v. State, 5 Ga. App. 603; Blake v. Blake, 70 Ill. 618; Rivers v. State, 97 Ala. 72; People v. Whitney, 105 Mich. 622; People v. Loris, 131 N. Y. App. Div. 127; Ford v. State (Ga.), 78 S. E. 782; Heldt v. State, 20 Neb. 497.)

*D. A. Preston,* Attorney General, for defendant in error.

The testimony of Yemington is corroborated; but, from the evidence of Yemington himself and of the sheriff, it shows that Yemington was merely a feigned accomplice

and not within the rule requiring corroboration. (1 R. C. L. 159; State v. Hoxsie, 2 A. S. R. 838; State v. McKean, 14 Am. Rep. 530; State v. Douglas, 99 A. S. R. 688, 98 A. S. R. 158.) If there be a conflict in the evidence as to whether a witness is an accomplice it is a question for the jury under proper instruction. (People v. Kraker, 72 Cal. 459; State v. Schlagel, 19 Ia. 169; State v. Carr, 28 Or. 389; Williams v. State, 33 Tex. Cr. Rep. 128.) The instructions numbered 9 and 10 were therefore proper. The surrounding circumstances and accompanying acts of defendant show a felonious intent to steal. The Nebraska authorities cited by plaintiff in error are based upon facts wholly different from the facts in the case at bar. The non-consent of the owner of the stolen property need not be shown by the owner's testimony, but may be shown by other evidence. In the present case, it was shown by defendant in his cross-examination of the witness, Yemington, and he is bound thereby. No theory of the defense could be seriously considered as being consistent with the defendant's good faith in taking this stock. Failure to instruct concerning the effect of possession of stolen property was not assigned as error. The model instruction alleged by plaintiff to be set forth in the case of Lamb v. State, 40 Neb. 316, regarding the testimony of accomplices, was in fact given in the present case. There is no evidence that anyone was employed to hunt up evidence, hence an instruction as to the credibility of persons employed in looking up evidence was unnecessary. It was clearly proven that Mrs. Thompson was the owner of the stolen horses.

Scott, Justice.

William McAdams, who was defendant below, was charged and convicted of the crime of the larceny of two horses of value, and which the jury found to be of the value of forty dollars, the personal property of Elizabeth Thompson, and brings error.

1. It is contended that the evidence is insufficient to support the verdict, and that the court erred in overruling

defendant's motion for a directed verdict. In support of this contention it is argued that the evidence upon which the state relied for a conviction, in so far as any material fact or essential ingredient of the crime charged is concerned, consisted of the uncorroborated testimony of an accomplice. The evidence of Yemington, the claimed accomplice, was to the effect that early in October, 1913, he and the defendant met in Newcastle, Wyoming, and had several conversations about stealing live stock, and that he, Yemington, told him of an opportunity to steal some live stock in the vicinity of his ranch; that Yemington communicated the substance of these conversations to the sheriff and the evidence of the latter and other witnesses is to the effect that he was advised by the sheriff to go ahead and try and catch McAdams in the theft of live stock. That in the afternoon of October 7th they left Newcastle and went about eighteen or nineteen miles south to Yemington's homestead in Weston County, Wyoming, where he was then and had been living for eight years prior thereto. According to the testimony of Yemington, the next morning, that is to say on October 8th, they went out on the open range and in Weston County, State of Wyoming, rounded up some mares, among which were two bearing the Shipwheel brand, and which mares were followed by two unbranded colts which were owned by Mrs. Elizabeth Thompson, and separated the mares from the colts, took the latter and drove them into Yemington's corral and partially halterbroke them and on October 9, took them south as far as Cheyenne River and crossed the river and put them in a pasture belonging to one Zerbst. Yemington says that from this point he returned to Newcastle, leaving the colts in the possession of defendant and Zerbst, and in the latter's pasture, and told the sheriff of what had occurred. He also testified that Mrs. Thompson was at his ranch on the 13th of October with the sheriff making inquiry as to where the colts were. The defendant testified that the mares and colts were in Yemington's corral at the time that they reached the ranch when they went out from Newcastle;

that the mares were branded with the Shipwheel brand and that Yemington told him he owned the mares; that he bought the colts from Yemington in good faith for and upon an agreed price, part of which he had paid Yemington before leaving Newcastle; that he went out to Yemington's place to take a look at the colts before he finally closed the deal; that they were to be delivered at Zerbst's ranch and that they were satisfactory and he purchased them, and that he helped Yemington to lead and drive the colts to Zerbst's ranch and put them in the latter's pasture. The witness Sabin was sworn as a witness and testified on behalf of the state that afterward and in October he was at Zerbst's ranch when defendant and Zerbst ran in about eight head of colts and branded them and in which branding he assisted and that three of the colts were branded with a "fleur de lis" and at the time of such branding defendant told him he got them on South Beaver. The witness Quick testified that he was the deputy sheriff and that he saw the colts in Zerbst's pasture and that they had been freshly branded and he helped to bring them from the pasture to Newcastle when they were placed in Harlow's barn. Mack Barber testified that he was in the employ of Elizabeth Thompson during August, September and October, 1913, in riding the range and identified the colts and mares which had in the meantime been brought in from the range as the property of Mrs. Thompson, for whom he had rode the range. The sheriff testified that he went to Zerbst's ranch, accompanied by the witness Quick, who was his deputy, and he inquired of Zerbst and defendant, who were both at the former's place, if there were any colts in the pasture and both answered in the negative, whereupon he searched the pasture, found the colts in controversy, brought them up from the pasture and inquired of both defendant and Zerbst if they owned them and they both answered no. After the state rested its case the defendant filed his motion for a directed verdict, which the court overruled. The defendant testified that he met Yemington at Newcastle a few days before the date of the alleged theft for the first

time and that Yemington told him he was hard up and needed money and that he, Yemington, said he had some colts at his ranch that he would like to sell to him and that he paid Yemington five dollars down on the purchase price; that he was in Newcastle from October 1st to October 8th, and on the last day they went out together to Yemington's ranch and took a look at the colts and also at that time saw the Shipwheel brand on the mares. "I supposed the colts were his—he told me they were—and said to me, 'I have a perfect right to sell them,' and he helped to deliver them over to Dick Zerbst's pasture." He further testified that a short time after he paid Yemington the balance of forty-five dollars for the colts and that he branded the colts, but had no recorded brand, and when inquired of on cross-examination what brand he used, he answered: "I am liable to use any of them, that is any brand that is not recorded"; that he branded the colts in what the other witnesses denominated a fleur de lis brand and was intending to get that brand recorded. He further testified that Mr. Quick was present when the sheriff placed defendant under arrest, and that Mr. Zerbst and the sheriff went down into the pasture and brought to the corral defendant's horse and the colts. The defendant made answer to the following cross-questions propounded by the state: "Q. At that time did he (meaning the sheriff) ask you whether they were your horses or not? A. Yes, sir. Q. What did you reply? A. I told him that those, that they were—those saddle horses were mine, but those colts were not, *but they were mine.* Q. You tried to put one over on the sheriff? A. I just wanted to see what he knew. Q. So you denied the ownership, however? A. I did to him, but I don't deny it now. Q. You don't deny it now? A. No, sir." The defendant introduced in evidence a certified copy of the record of the Shipwheel brand showing its record on September 15, 1907, in the name of D. W. Thompson of Newcastle, Wyo. Yemington in his cross-examination denied that he was ever paid any money for the colts or that he had at any time received any money whatever from the

defendant. Other evidence appears in the record, but we think enough has been referred to for the purpose of disposing of the case.

It is argued that Yemington was an accomplice and that his evidence on the essential ingredients of the crime charged are uncorroborated. We think upon the record this contention cannot be sustained. In the first place it was a question for the jury to determine from the evidence whether Yemington was an accomplice or not and the jury were so instructed. He claimed to have been a feigned accomplice, acting in good faith under the instruction of the sheriff, and if the jury so found then they could rest their verdict upon his evidence alone provided they believed he told the truth and his evidence covered the whole issue of the case. (1 R. C. L. 159.) If, on the other hand, the jury found that he was an accomplice, then upon the record every essential fact was either admitted by the defendant or the evidence of Yemington was corroborated by the other evidence in the case. The denial of the colts being in Zerbst's pasture, where he testified that he had placed them, and his denial of ownership when confronted with the colts bearing a fresh brand which the defendant admittedly placed on them was evidence in refutation of his claim of having bought them from Yemington and was sufficient, together with other evidence, to carry the case to the jury on the question of felonious intent to deprive the owner of the colts of his or her property at the time he claims to have bought them from Yemington.

It is argued that the Shipwheel brand on the mares which the colts were following having been recorded in 1907 in the name of D. W. Thompson and so shown by defendant and no transfer being proved by the record from D. W. to Elizabeth Thompson, that there was a fatal variance in the proof as to ownership. Aside from the brand record, and notwithstanding the failure of the state to produce the alleged owner as a witness, and no showing having been made of inability to procure her attendance as a witness to testify to her ownership and non-consent to the taking of

the colts, there was evidence of ownership of the colts as laid in the information by other testimony. It is admitted in argument that such evidence would be competent if a showing were made of inability to obtain the presence of the owner as a witness at the trial and in the absence of such showing it could not be said to be the best evidence which the case afforded. The first witness who was questioned as to the ownership, as did also Barber, another witness for the state, without objection, answered that the horses were owned by Elizabeth Thompson. The objection here is as to the sufficiency and not error in the admission of the evidence and which was not specifically pointed out in the motion for a new trial.

It is argued that as Elizabeth Thompson, the alleged owner, was not called as a witness to prove that the colts were taken without her consent, there was a failure of proof on that question. There is some conflict in the decisions on the question as to whether in larceny this essential fact must be proved by direct evidence of the owner. It is said in Wigmore on Evidence, at Section 2089, that the rule contended for originated at the suggestion of eminent law writers in this country and was adopted from and at one time obtained in England, but was subsequently repudiated in that jurisdiction, "and that so far as the policy of it is concerned there is nothing to be said in its favor. The defendant is amply protected by the rule of reasonable doubt; and the proposed rule merely adds an unnecessary complication and an opportunity for contriving a verbal trap for the judge in his instructions to the jury." It seems, however, that the rule gained a foothold in this country and continued to be followed after its repudiation in England. The question has been directly passed upon and the rule repudiated in cases where non-consent of the owner could reasonably be inferred from the circumstances shown in the evidence. (25 Cyc. 127; Filson v. Terr., 67 Pac. 473, 11 Okla. 351; Palmer v. State, 97 N. W. 235, 70 Neb. 136; Van Syoc v. State, 69 Neb. 520, 96 N. W. 206; Weigrefe v. State, 66 Neb. 23, 92 N. W. 161; People v.

Wiggins, 92 N. Y. 656; People v. Jacks, 76 Mich. 218, 42 N. W. 1134; Welsh v. State, 3 Tex. App. 422; State v. Ireland, 9 Ida. 686, 75 Pac. 257; State v. Wong Quong, 27 Wash. 93, 67 Pac. 375.) Other cases may be cited, but we deem it unnecessary. The foregoing cases are in line with the views of Dr. Wigmore and in our judgment represent the better reasoning that in larceny where, as here, the facts in evidence warrant the reasonable inference that the property was taken without the consent of the owner a conviction will not be set aside for want of direct proof of such fact. There is no evidence that Yemington was in the employ of the owner or that he had authority from the owner to deliver or sell the colts to defendant or to the taking of the colts by the latter and branding them and defendant's denial of ownership under the circumstances as shown by the evidence, together with other evidence, would support a reasonable inference and finding by the jury that all his acts with reference to taking and branding the colts were without the consent of the owner. We are further of the opinion that the court properly overruled the motion for a directed verdict, for at the time it was made there was sufficient evidence to go to the jury.

The defendant contends that the court erred in its refusal to give certain instructions requested by him and in giving certain instructions over his objection. The instructions given or refused do not appear in the bill of exceptions except by recital of some of them in the motion for a new trial. This being a criminal case, in order to entitle an exception in the matter of giving or refusal to give an instruction to consideration, the instruction and exception must be carried directly and not alone by way of recital in the motion for a new trial into the bill of exceptions. (Comp. Stat. 1910, Sec. 6235: Van Horn v. State, 5 Wyo. 501, 505, 506, 40 Pac. 964; Stoner v. Mau, 11 Wyo. 594, 515, 72 Pac. 193, 73 Pac. 548.) We discover no prejudicial error in the record and the judgment will be affirmed.

*Affirmed.*

POTTER, C. J., and BEARD, J., concur.