## STATE v. CRUMP*
(No. 1230; May 25, 1926; 246 Pac. 241.)

INTOXICATING LIQUORS—SEARCHES AND SEIZURES—CRIMINAL LAW—EVIDENCE—EXCEPTIONS TO INSTRUCTIONS—NUISANCE—REVERSAL—SENTENCE.

1. Search of one's residence without a warrant, and not in connection with a valid arrest there, is violative of Const. art. 1, § 4, and state prohibition law (Laws 1921, c. 117, § 32).

2. Any error in refusing to direct verdict, not being complained of in specifications of error, is waived.

3. Defendant is not in position to complain of evidence obtained by illegal search; his guilt being shown by his admission as a witness and other evidence introduced without objection.

4. Laws 1921, c. 117, § 31, does not protect possession in home of moonshine illegally manufactured and obtained since taking effect of statute.

5. Under Comp. St. 1920, § 7532, subds. 5-7, exceptions to instructions to be valid, allowing review, must be taken before argument to jury.

6. Under Laws 1921, c. 117, § 20, to constitute place a common nuisance because of liquor being kept there, it must be kept for sale.

7. The court, in imposing sentence, having apparently considered the conviction on both counts, it providing that, on serving jail sentence on first count, jail sentence under second count be suspended during good conduct, cause will be remanded for new sentence under first count, on conviction under second count being reversed for insufficient evidence.

*See Headnotes (1) 33 C J p. 678 n. 42. (2) 17 C J p. 180 n. 18 (3) 17 C J p. 321 n. 45, 47. (4) 33 C J p. 584 n. 87. (5) 17 C J p. 83 n. 99. (6) 33 C J p. 589 n. 52. (7) 17 C J p. 371 n. 51.

APPEAL from District Court, Natrona County; ROBERT R. ROSE, Judge.

C. W. Crump was convicted on two counts for violation of the prohibition statute, and he appeals.

*E. G. Vanatta,* for appellant.

No search warrant was issued as provided in Section 33 at Page 158, laws 1921, and all evidence procured by unlawful search should have been excluded; Peterson case, 27 Wyo. 216; evidence that was incompetent and immaterial before the trial, was insufficient at all times during the trial; Gore v. State, 218 Pac. 545; an objection made during the trial is sufficient; the court erred in receiving the evidence of Mr. Miller with reference to the discovery of liquor and in not overruling the defendant's objection thereto; Amos v. U. S. 225 U. S. 313; officers went to defendant's house to do an illegal thing; the court erred in its instructions with reference to the possession of intoxicating liquor; there was no evidence that defendant kept liquor for the purpose of sale, barter or exchange.

*David J. Howell*, Attorney General, and *John C. Pickett*, Assistant Attorney General, for respondent.

There are many cases of search and seizure without a warrant that are not in violation of constitutional rights; Wiggins v. State, 28 Wyo. 480; search warrants are not for purposes of discovery, but for obtaining goods or evidence unlawfully possessed, to be used as evidence in a criminal prosecution, and the warrant will not issue except on oath that such goods are actually unlawfully possessed; State v. Peterson, 27 Wyo. 185; as to whether evidence may be introduced over objection before it is received on ground that the evidence was illegally obtained, the courts seem to be in conflict; Gore v. State, (Okla.) 218 Pac. 545, cited by appellant, holds that the objection should be sustained; the weight of authority seems to be that, if the evidence is otherwise competent, the court will not stop during the trial to determine how it was obtained; Peterson case, 27 Wyo. 217; the cases are collated in 24 A. L. R. 1408; there is nothing in the record to show that the liquor was unlawfully seized; the presumption is that the officers acted within the scope of their authority; Stoker v. Stoker, (Texas) 254 S. W. 398; Gould v. State, 252 S. W. 772; Kitt v. Car, 130 N. E. 1; 22 C. J. 136; in Weinandt v. State, (Nebr.) 13 N. W. 1040, and McKay v. State, (Nebr.) 122 N. W. 893, it was held to be reversible error to receive in evidence a search warrant issued previously in the case; instructions given with respect to possession were in accordance with Chapter 117, laws 1921; defendant admitted that he had unlawfully purchased the liquor and sought to justify his possession by saying that it was for his personal use.

POTTER, Chief Justice.

The appellant herein was charged in the district court in Natrona County, by information verified and filed by the county and prosecuting attorney, with having, on the 27th day of April, 1923, wilfully and unlawfully possessed

whiskey containing one-half of one per cent or more of alcohol and fit for use for beverage purposes, and in a second count, that he did wilfully and unlawfully keep, use and maintain a certain described building, wherein was kept whiskey containing one-half of one per cent or more of alcohol and fit for use for beverage purposes, "to the common nuisance of the people of said county and state." In other words, he was charged with having unlawfully possessed intoxicating liquor, and also with maintaining a common nuisance by the keeping of said liquor in a certain described building. He was found guilty on each count, and has brought the case here by direct appeal.

The evidence upon which conviction was asked under the second count was the same as that introduced to convict upon the first count; and it consisted of proof to show that the defendant had in his possession several bottles of liquor described as "moonshine whiskey," in a place occupied by him as his home, where he lived alone. This will later be shown more specifically by a recital of the testimony. And the fact of such possession, without any proof of sale or attempt to sell, or to use, except for himself and guests in that same place, was all that was shown to convict upon either count.

The proof of said fact of possession was obtained by a search of plaintiff's said place of residence by a deputy sheriff and others assisting him, and the liquor so obtained was introduced in evidence, together with testimony of a chemist showing an analysis of the contents of one of the bottles and that it did contain intoxicating liquor, considerably more than one-half of one per cent of alcohol, but fit for beverage purposes, and was what is known as moonshine whiskey. So far as the evidence shows said search was made without a warrant therefor or even a warrant for appellant's arrest, which was in clear violation of the provisions of Section 4 of Art. I of

our state constitution, providing that the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and that no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched or the person or thing to be seized. And it was also without any authority under our state prohibition law, which is a substantial copy of the national Volstead Act, with such changes only as were necessary to make it applicable within the state. Laws 1921, Ch. 117.

That act provides, as it is provided in the Volstead Act, that it shall not be unlawful to possess liquor in one's private dwelling while the same is occupied and used by him as his dwelling only, provided the same is kept for use only for the personal consumption of the owner and his family residing in such dwelling, and his bona fide guests while entertained therein by him. id., Sec. 31. Said act provides also that no warrant shall be issued to search a private dwelling, occupied as such, unless some part of it is used as a store, storage room, shop, hotel or boarding house, or other purpose than a private residence, or unless such private dwelling is a place of public resort, or where intoxicating liquors are manufactured, sold, kept for sale, or given away in violation of the act. id. Sec. 32.

It was recently said by the Supreme Court of the United States in Agnello v. U. S., 46 Sup. Ct. Rep. 4, that while the right without a search warrant contemporaneously to search persons lawfully arrested while committing crime, and to search the place where the arrest is made in order to find and seize evidence connected with the crime as its fruits, or as the means by which it was committed, is not to be doubted, that right does not extend to other places, and that it has always been assumed by said court, although not directly decided, that one's house cannot lawfully be searched without a search warrant, except as an

incident to a lawful arrest therein. And the court, there-upon, said further:

"The search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws. Congress has never passed an act purporting to authorize the search of a house without a warrant. On the other hand, special limitations have been set about the obtaining of such search warrants for that purpose. * * * Safeguards similar to the 4th amendment are deemed necessary and have been provided in the Constitution or laws of every State of the Union. We think there is no state statute authorizing the search of a house without a warrant; and, in a number of state laws recently enacted for the enforcement of prohibition, in respect of intoxicating liquors, there are provisions similar to those in § 25 of the National Prohibition Act. Save in certain cases as incident to arrest, there is no sanction in the decision of the courts, federal or state, for the search of a private dwelling house without a warrant. Absence of any judicial approval is persuasive authority that it is unlawful. * * * Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant, and such searches are held unlawful notwithstanding facts unquestionably showing probable cause. * * * It is well settled that, when properly invoked, the Fifth Amendment protects every person from incrimination by the use of evidence obtained through search or seizure made in violation of his rights under the Fourth Amendment. Boyd v. United States, supra, 630, et seq; Weeks v. United States, supra, 398; Silverthorne Lumber Co. v. United States, supra, 391, 392; Gouled v. United States, supra, 306; Amos v. United States, 255 U. S. 313, 316. The government contends that, even if the search and seizure were unlawful, the evidence was admissible because no application on behalf of defendant was made to the court for the

return of the can of cocaine. The reason for such application, where required, is that the court will not pause in a criminal case to determine collateral issues as to how the evidence was obtained. See Adams v. New York, 192 U. S. 585, 594, affirming 176 N. Y. 351. But in this case, the facts disclosing that the search and seizure violated the Fourth Amendment were not in controversy. They are shown by the examination of the witness called to give the evidence. There was no search warrant; and from the first, the position of the government has been that none was necessary.''

And this court has followed the Federal Supreme Court decisions upon that subject. State v. Peterson and State v. Romano, 27 Wyo. 185, 194 Pac. 342. It was shown by the first witness examined by the prosecution, who happened to be defendant's landlord, that the defendant rented part of a box-car from him, had rented it a little over a year, and that he lived there, that it was ''his residence,'' that he did his cooking and slept there. And there was not the slightest evidence to show any fact which, under the prohibition law, would constitute an exception to the provisions thereof with reference to the keeping of liquor in a home or the issuance of a warrant for the search of a private dwelling place.

It does not appear that there was any motion in this case or any preliminary proceeding for a return of the liquor obtained upon the search aforesaid, or to suppress the same as evidence, and there is nothing in the case calling for a decision as to the necessity of any such preliminary proceeding to permit the making of a valid objection upon the trial to the introduction in evidence of the liquor taken upon such a search. Much of the evidence concerning the search and the liquor found thereby was received in evidence without valid objection. Thus, the first objection, seeming to have been intended to raise the point of the validity of the search and the right to intro-

duce the liquor in evidence, was interposed to a question propounded to the deputy sheriff, asking the purpose for which he had gone to the defendant's place. Having quickly answered that "We had a warrant," defendant's counsel objected to any testimony referring to a search warrant, on the ground that there was none in the files and none had ever been served upon the defendant. That objection was probably not a good one, nor sufficient to raise the material question as to the right to introduce the liquor found upon the search. But it was sustained, and no further effort was made by the prosecution to show the issuance of any such warrant or that the search was made by the authority of such a warrant, or by authority of a warrant for the arrest of the defendant.

During the examination of the same witness, defendant's counsel moved to strike out the answer that they went down to look for Mr. Crump and for liquor, on the ground that they had no right there without a search warrant. That objection was overruled, and the ruling excepted to. The next question, asking if he had found liquor there at that time, was also objected to on the ground that there was no search warrant in the record. We think that was not a valid ground of objection, and the trial court stated that it was not a ground for objection at that time. The same witness was permitted without objection to testify where he found certain liquor that was referred to, and it was apparently there for reference. And he answered that a half-pint bottle was found on the little table, and four pints, four half-pints, and two pints, inside of a little tool box, defendant being personally present at the time. When thereupon asked if he had seen a certain article, evidently one of the bottles, that question was objected to unless it was shown that the officer had a lawful right then to search for the liquor at that place, which was overruled and the ruling objected to. But the witness was allowed to state that the bottle contained moonshine without any objection until after the

answer was in, and then it was objected to upon the ground that no foundation was laid. Other articles, evidently other bottles, were identified by the witness without any objection whatever, and he was allowed to state that the same contained moonshine whiskey. However, when the several articles thus referred to were offered in evidence, the offer was objected to upon the ground that it was incompetent, irrelevant and immaterial, ''and no foundation laid.'' The court having overruled the objection and an exception having been reserved thereto, the reporter's notes show that the articles referred to were marked as exhibits in the case.

·The said witness described the room in which the search was made, which has already been referred to as the defendant's residence, as a box car room, probably eight feet wide by twelve feet long, and on the west end (the door facing the east), a bed at the west end, and as you go in the door, there is a stove to the left, and between the stove and bed is a wash-stand. There is also a table, and just above the table, and a little to the west, some shelves, and a built-in cupboard, a trunk, some suit-cases, and a tool box. This appears to show nothing to dispute the fact that it was used only as a residence or home.

On cross-examination the same witness was asked whether he saw anything there that would indicate that it was otherwise than a bachelor's place to live. That was objected to, and the objection overruled and an exception taken. We need not consider whether the ruling in that respect was erroneous or not, for as we view the case it becomes immaterial. The fact that it was a living place only was clearly shown. The sheriff was next called as a witness, and his testimony as to what was found there, since he seems to have gone there with or shortly after the deputy had arrived there, was objected to unless a search warrant be produced, and the objection was overruled. But he was allowed to state without objection that the several bottles of liquor in evidence were found in de-

fendant's possession at the stated place.   On cross-examination, the court sustained objections to questions inquiring whether or not the search was made by authority of a search warrant.   But for the reasons above stated, these rulings need not be considered.

A deputy prosecuting attorney, however, was also called as a witness, and testified that he went with members of the sheriff's office to defendant's place for the purpose of searching for liquor, and that they found liquor and he identified one of the bottles aforesaid as having been found at that time at defendant's place.   No objection whatever was made to his evidence upon that subject, and it is in the case without objection.   And there was no cross-examination.   The witness who testified as a chemist in the case and to his analysis of the contents of one of the bottles found upon the search and introduced in evidence was allowed to give his entire testimony without the slightest objection.   Indeed, on cross-examination, he testified in response to questions by defendant's counsel: "Q. It is fit to drink, is it?   A. Yes, sir.   Q. Pretty good moonshine, is it?   A. Fair."

At the conclusion of this testimony for the prosecution the court overruled a motion to direct a verdict for the defendant, and thereupon the defendant testified in his own behalf.   He testified to the fact that the place where the search was made was his home and that he had occupied it practically two years.   Also that the liquor which had been introduced in evidence belonged to him, that he had the liquor there to drink for his own use, but that he did not have it for any purpose of sale or giving it away. He also testified that he was not engaged in the sale of liquor there, and that all he did with the liquor was to drink it when he could get it.   He testified that he had bought the liquor, but could not remember the name of the person from whom he had purchased it.   On cross-examination he testified that he had bought the liquor

from someone whom he could not name, that he got about four quarts at a time, sometimes six, and that he had the liquor for his personal use in just the way that it had been brought to him. That he could not say how long it had been in his possession; that he frequently bought liquor from various persons.

The ruling of the trial court in refusing to direct a verdict at the close of the evidence for the prosecution is not compained of in the specifications of error, and the error, if any, in that ruling is therefore waived. But we do not mean by stating that ground of decision to indicate that the ruling may have been erroneous. We would be inclined to a contrary opinion, in view of the evidence received without objection as shown above, including identification of the liquor as having been found in defendant's possession, and also as being moonshine or illicitly manufactured whiskey. And because of the voluntary admissions of the defendant as a witness in his own behalf, above mentioned, identifying the liquor admitted in evidence as belonging to him, and as having been in his possession, in connection with the evidence of its character as moonshine whiskey, shown by the evidence of the state not objected to, the defendant is not in a position here to claim immunity because of the illegal search or the incompetency of the evidence obtained thereby.

It seems to be a general rule that error, if any, in admitting illegal, irrelevant or improper testimony is usually harmless where the fact that is intended to be proved shall be as fully shown by other evidence which is competent, or by other evidence introduced without objection. 17 C. J. 321-323. And also that the admission of incompetent evidence is not prejudicial, where the same facts are established by the testimony of the defendant himself. 17 C. J. 324. Notwithstanding a line of decisions in Oklahoma commencing with Gore v. State, 218 Pac. 545, that evidence produced by the state by means of an illegal

search and seizure is inadmissible, it is held in that state that a conviction will be upheld, in the face of such improper testimony, where the defendant has voluntarily taken the stand and admitted his guilt, so that the jury could come to no other rational conclusion. Dyer v. State, 220 Pac. 69. So it was said in Maine:

"We are, however, not called upon to discuss the exceptions of the respondent in the present case. His conviction must be sustained upon grounds entirely independent of the question of immunity. He took the witness stand in his own behalf at the trial in the state court, and, without claiming the immunity guaranteed by the state constitution, as was his right, voluntarily testified that he was engaged in the liquor business." State v. Verecker, 126 Atl. 827.

In Liberia v. United States, 299 Fed. 300, the Circuit Court of Appeals for the 9th Circuit, said:

"Before the trial the plaintiff in error petitioned the court for the return of the property seized under a search warrant on the ground that the search was unauthorized and illegal. The search warrant was of doubtful validity, because of a mistake in the name of the street and in the name of the owner or occupant of the premises; but the plaintiff in error took the witness stand in his own behalf, and admitted the possession of the still, and the possession of the intoxicating liquor, as charged. In short, he admitted every material fact testified to by the raiding officers, and is now in no position to claim that incompetent testimony was admitted to establish facts testified to by himself."

It was held, referring to the general principle above alluded to, in Hobart v. United States, 299 Fed. 784, a decision by the 6th Federal Circuit Court of Appeals, quot-

ing from the syllabus, that "where the guilt of the respondent so fully appears that the jury could not rightfully have rendered a verdict of acquittal, as where acts which are sufficient to constitute the fact are admitted, conviction will not be reversed because of errors of the court in rulings or charge."

And in the case of Blowe v. State, 130 Miss. 112, 93 So. 577, it was held that where a defendant, testifying in his own behalf, admits the only fact which the state has proven as the result of a search of his home without a search warrant, such proof by the state is without harm, and therefore, not reversible error. The court said:

"On the trial of appellant the evidence obtained against him by virtue of the search of his home without a search warrant was used over his objection, and this action of the court is assigned as error. Clearly, under Tucker v. State, supra (128 Miss. 211, 90 So. 845), and the cases following it, this evidence was incompetent; however, under the facts of this case, its admission was without harm to appellant, because he voluntarily went on the witness stand in his own behalf and admitted the only fact which the state had been enabled to prove by virtue of the illegal search of his home, namely, his possession of the goods alleged to have been stolen."

We find no prejudicial error, therefore, in the rulings complained of relating to the legality of the search and the competency of the evidence thereby procured; and we think the evidence must be held sufficient to support defendant's conviction on the first count of the information, charging merely the illegal possession of liquor, unless it is the law that possession of moonshine liquor, liquor not only illicitly manufactured since the taking effect of the prohibition law, but obtained since that time, is fully protected as lawful by the declarations of Sections 31 and 32 of our prohibition statute above referred to. And we are

not prepared to hold that to be the law. Indeed, the chief contention on the part of the appellant upon the question of illegal possession is that his possession was lawful, under the terms of the prohibition law, notwithstanding that the liquor may have been illicitly manufactured, and may have been obtained by defendant after the taking effect of said prohibition law. The Federal Circuit Court of Appeals for the 9th circuit has passed directly upon the question. Filippelli v. United States, 6 Fed. 2nd 121. The appellant in that case had been convicted of a violation of the national prohibition act, and brought error. At the close of the trial he had requested an instruction to the effect that it was not unlawful for a person to possess liquor in his private dwelling, while occupied as a dwelling only, and that such liquor need not be reported, provided that it is for his own use and the use of members of his family and his bona fide guests when entertained by him. The court, in its opinion, by Circuit Judge Rudkin, disposed of that matter by saying:

"The request to charge the jury that it was not unlawful for the plaintiff in error to possess intoxicating liquor in his private residence, while occupied by him as his private dwelling only, * * * * was properly refused, because the request assumed that liquor unlawfully manufactured or acquired might be lawfully possessed, and such is not the law. True, a party might still possess intoxicating liquor for beverage purposes, notwithstanding the national prohibition act; but the law imposes upon him the burden of proving the legality of his possession, and no such showing was made here."

In the case at bar the court instructed the jury that it is unlawful in this state to be in possession of intoxicating liquor, unless a permit for the purchase by the person charged, and the sale to him by some other person, had been issued by the proper authority in the state, and that

if it has been established to your satisfaction by the prosecution that he was in possession of the liquor, the burden is then upon the defendant to show that he lawfully acquired it, and lawfully used it, or unless shown by the defendant that he acquired the liquor before the present law went into effect. And, further, that they might find defendant guilty, though the liquor was possessed in his home, unless he shows by competent evidence that he had lawfully acquired the liquor and lawfully used it, in case it should be found that defendant did possess the intoxicating liquor as charged. But the instructions themselves are not properly before us for consideration for the reason that as shown by the record the instructions were not excepted to until after the conclusion of the argument to the jury on behalf of both parties. The order of proceedings of a criminal trial under our statute (Comp. Stat. 1920, § 7532) so far as material upon this point, is (5th) that after the evidence has been produced, first by the state, then by the defendant and then by the state through rebutting evidence, unless permitted by the court for good reasons and in furtherance of justice to offer evidence again in chief, either party may request instructions to the jury on the points of law, which will be given or refused by the court, and which instructions shall be reduced to writing if either party require it. And (6th) "before the argument of the case is begun, the court shall immediately, and before proceeding with other business, charge the jury * * *," and (7th) when the evidence is concluded, and the charge given by the court, unless the case is submitted without argument, the counsel for the state shall commence, the defendant or his counsel follow, and the counsel for the state shall conclude the argument to the jury. We think it has been the general understanding, and also that it must be held to be the law, under those provisions of the statute, that exceptions to instructions, to be valid or of any force, must be taken before the argument to the jury, and when not taken until after

the conclusion of the argument and the whole case has then gone to the jury upon the instructions, it is too late for a valid exception thereto.

The second count in the information charges that the said defendant did, on the date mentioned, wilfully and unlawfully "keep, use and maintain a certain building (describing its location), in said county and state, wherein intoxicating liquor was kept, to-wit, whiskey, containing one-half of one percentum or more of alcohol and fit for use for beverage purposes, to the common nuisance of the people in said county and state." This charge very clearly is based upon Section 20 of the said general prohibition act (Laws 1921, Ch. 117), which provides that any room, house, building, boat, vehicle, automobile, structure, or place, where intoxicating liquor is manufactured, sold, kept or bartered in violation of this act, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance, shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1000, or be imprisoned for not more than one year, or both. There is another statute enacted at the same session of the legislature (Laws. 1921, Ch. 87), providing for the abatement of a "nuisance or public nuisance," but the penalty thereunder is for using and occupying the house or other building or structure for the purpose of keeping, maintaining, etc., and for keeping for sale, etc., and applies to other unlawful acts as well as liquor law violations, as, for example, a house used and occupied as a house of ill fame, or for purposes of gambling. But the words "common nuisance" are used only in Ch. 117, and the words used in the information charging the offense very clearly was intended to charge an offense under said Section 20; that section, or at least the part of it upon which the charge is based, being an exact copy of section 21 of the national Volstead act. And it has been held by the Supreme Court

of the United States under that section of the Volstead
Act that the offense described therein is not committed
by merely keeping, using, or maintaining the said room,
house, building or place, but that in order to constitute
the offense it must appear that the intoxicating liquor
was kept for sale or barter or other commercial purposes.
Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 65 L.
Ed. 151, 41 Sup. Ct. Rep. 31. The court, in that case,
after quoting the material part of the section, said:

"The word 'keep' in this section is the only one of pos-
sible application to the case at bar, and the words with
which it is immediately associated are such that, as here
used, it plainly means 'Keep for sale or barter, or other
commercial purpose.' "

There was no evidence whatever of any sale of liquor
by the defendant at or from his said house or home, or
that he was engaged in the business of selling, or had even
made any sale of liquor there or elsewhere. And there-
fore, upon the construction placed upon the section in the
case above cited, it seems very clear that there was no
evidence under which the conviction upon the second
count can be upheld. The sentence of the court upon the
verdict was that the defendant, having been duly found
guilty of the charge contained in the first count in the in-
formation; illegal possession of intoxicating liquor, and
of the offense charged in the second count, maintaining
a nuisance, that he, the defendant, be confined in the jail
of the county of Natrona, for a term of sixty days, and
that he pay a fine of $200 on the first count of the said
information, and that he pay a fine of $200 and costs on
the second count of the information, immediately follow-
ing which in the judgment and sentence is this paragraph:
"That upon the payment of said fine of $200 on the first
count, and of said fine of $200 on the second count, and
upon serving the jail sentence of sixty days on the first
count, the jail sentence imposed under the second count

of said information be, and the same is hereby, suspended during the good conduct, and only during the good conduct, of the said defendant.'' And it further orders that the defendant stand committed to the said jail during the period of sixty days, and until said fine and costs have been paid, or until he shall have been legally discharged.

The conviction and judgment upon the second count must be reversed and an order will be entered for the discharge of defendant upon that count. The conviction upon the first count must, for the reasons stated, be sustained, but when imposing sentence, the court seems to have considered the conviction on both counts, at least as respects the imprisonment thereby imposed, since it was provided that upon serving the jail sentence on the first count, said sentence under the second count shall be suspended during good conduct. It seems proper, therefore, to remand the cause for a new sentence upon the conviction under the said first count, and it will be so ordered.

*Affirmed in Part, and Remanded for New Sentence.*

BLUME, J., and TIDBALL, District Judge, concur.
KIMBALL, J., did not sit.