## STATE v. PARKER, ET AL.
(No. 1749; August 9, 1932; 13 Pac. (2d) 641)

The case was submitted for the defendant and appellant on the brief of *C. G. Cypreansen* and *W. B. Holliday,* both of Casper, Wyoming.

The case was submitted for the State on the brief of *J. A. Greenwood*, Attorney General, *Richard J. Jackson*, Deputy Attorney General, *George W. Ferguson*, Assistant Attorney General, and *R. Dwight Wallace*, all of Cheyenne, Wyoming.

480

RINER, Justice.

Review of the record in this case is sought by direct appeal from a judgment of the District Court of Natrona County. George Parker and another were by an amended information charged with the crime of grand larceny, the

property alleged to have been stolen being 335 gallons of gasoline from the goods of the Midwest Refining Company, valued at $30.15. Upon trial had, both defendants were found guilty and the value of the gasoline taken was assessed at $11.00. Judgment was entered on the verdict sentencing the defendants to terms in the Natrona County jail. This appeal is taken by Parker only. The facts established by the record are substantially these:

A pipe line is used by the Midwest Refining Company to carry to the city of Casper the gasoline extracted at the Midwest gas plant from the casing-head gas taken from the producing wells in Salt Creek. On the evening of August 2, 1930, an employe of the company aforesaid, specially detailed to observe the pressure registered in this pipe line on a gauge affixed to it for that purpose in Midwest, Wyoming, about 11:30 o'clock, noted that the gauge indicated a substantial drop in pressure. The supervising officials of the company were immediately notified and a group of them, with two deputy sheriffs, drove to what are known as the Beaton Corrals, located some ten or twelve miles south of Midwest, and not far from the highway between that place and Casper.

Upon the arrival of these men at this point, they found the defendants in the act of taking gasoline from the pipe line and running it into drums standing on a truck nearby, making use of a garden hose attached to a bushing in the line for the purpose. Six large drums had already been filled with gasoline and one partially filled. One of the defendants was discovered sitting on the ground with a wrench on the valve that came out of the pipe line. The other defendant, Parker, was found on the truck handling the hose that was used for filling the drums. The defendants were placed under arrest and removed to Casper. The trucks and the drums of gasoline also were taken into the possession of the officers.

The contention is made that the State failed to prove the venue of the place where the larceny was committed. In McFetridge v. State, 32 Wyo. 185, 231 Pac. 405, 234 Pac. 505, 512, concerning the manner of such proof, it was said: ·

"The principle, however, seems to be well established that direct evidence is not necessary to prove venue, but that, like any other fact, it may be established by proof of facts and circumstances from which it may reasonably be inferred. 16 C. J., Sec. 1573, pp. 768, 769; 1 Wharton, Crim. Ev., 10th Ed., Sec. 108."

Applying the principle of judicial notice to the proof of venue in Herman v. State, 33 Wyo. 58, 236 Pac. 507, 508, this language was used:

"It is contended that there was no evidence to prove venue. Soon after the shooting, the body of Anderson was carried to the room to which we have referred, and there was positive evidence that that room is in Natrona County, but no direct evidence that the place where the shooting occurred, some 12 feet outside the room, is in the same county. It is shown, however, that the shooting was in Lavoye, a place having streets, stores, banks, etc., located at or near the point where the Salt Creek highway crosses Castle Creek. We perceive no difficulty in holding that we may take judicial notice that the place of Lavoye, so described, is in Natrona County."

See also Wolfe v. State, 38 Wyo. 135, 264 Pac. 1033.

There is testimony in the record that the Beaton Corrals are about two miles south of New Lavoye and approximately ten or twelve miles south of Midwest proper; that they are on the west side of the highway from Casper to Midwest, about 400 or 500 yards from it; that the four-inch pipe line (the pipe line involved in this matter), called in the record the casing-head gas line, is but ten or fifteen feet from the west side of the corrals. Under the

previous decisions of this court as applied to this testimony, the point that venue was not proven is without merit. Especially is this so when we find further undisputed testimony:

"Q. This corral (Beaton Corral), what county and what state is it in?

A. Natrona County, Wyoming.

Q. Where this occurred, where you saw Mr. Parker and Mr. Bush that night?

A. Yes."

The courts of this state judicially notice the boundaries of the several counties therein. Robinson Mercantile Co. v. Davis, 26 Wyo. 484, 187 Pac. 931. See also Ford v. State, 5 Pac. (2d) 170 (Okla. Cr. App.) ; 16 C. J. 770, Sec. 1575; 23 C. J. 83, Sec. 867. See also, generally, on this question: State v. Eppers, 138 Ore. 340, 3 Pac. (2d) 989; State v. Caskey, 200 Ia. 1397, 206 N. W. 280; Tolston v. State, 42 S. W. 988 (Tex. Cr. App.) ; Fletcher v. Commonwealth, 210 Ky. 71, 275 S. W. 22.

The Chief Engineer of the Midwest Refining Company testified that he was Acting General Superintendent of the gasoline and gas department, had made a study of the price of gasoline, was familiar with it and could tell the jury the value of the gasoline taken out of the pipe line by the defendant on August 2, 1930 and, over objection, was allowed to do so. It appeared that the witness had consulted a nationally accepted trade journal, which published the price of oils, petroleum, casing-head gasoline, and gas, and was further familiar with contracts for the sale of casing-head gasoline in the Salt Creek field to the United States Government. It is now said that there was no competent evidence of the value of the gasoline drawn from the pipe line by the defendant. In Davis v. Graham, 31 Wyo. 239, 225 Pac. 789, 795, this court, speaking of a witness undertaking to prove the value of cattle on a certain date, said:

"We do not think that it was absolutely essential for plaintiff to be present at sales in order to be competent to testify to the market value of cattle on a certain day, provided that he gathers his knowledge from reliable sources, and we cannot assume that he did not so gather it, in view of the state of the record here. Chamberlain, supra, Sec. 2099, says that the hearsay rule has been much relaxed in connection with proof of market value and continues: 'Market value is a fact. The witness may derive his knowledge as to it from the information furnished by others. It may even be learned from an examination of stock or market reports, price lists, trade circulars, sales of similar property and the like. In short, a witness may testify to the value of property if his knowledge of it has been derived through the general avenues of information to which the ordinary business man resorts, to inform himself as to values for the proper conduct of his affairs.' "

The defendant introduced no proof on the subject. It is clear that there was sufficient evidence of market value of the appropriated property to be submitted to the jury. It may be observed also that the defendant was not convicted of grand larceny in this case.

It is claimed that there is a fatal variance between the charge in the amended information that gasoline was taken and the proof which was that casing-head gasoline was what was stolen. We do not consider that this point is well taken. Although Dr. Loy, an experienced chemist and a witness for the state, testified that, while the gasoline drawn off by the defendants into the drums was a different gasoline from that sold in filling stations commercially for automobiles, yet he said that its specific gravity was "approximately 80. or 81 degrees on A. P. I scale" which differs from the Baume scale "not more than one-half of a degree." The Century Dictionary defines "gasoline" as a "volatile liquid product commonly obtained from the distillation of petroleum. Its specific gravity is .629 to 6673 (95° to 80° B.)." In Magnolia Petroleum Co. v. Aiken, 289 S. W. 152, 153 (Tex. Civ. App.), discussing casing-head gas and gasoline, the court says:

"Many wells produce no oil, but only gas which is rich in gasoline content, and the gasoline produced therefrom is called casing-head gasoline."

In 1 Thornton's Law of Oil and Gas (4th Ed.), p. 391, Sec. 137B, it is said:

"Casing-head gas is a component part of oil. It is not made from dry gas, nor a product of it; but it is a product of wet gas, and wet gas exists only with oil. Gasoline can be manufactured from it. In saving gasoline from casing-head gas it is condensed by pressure—by compression of such gas."

In accord with these statements from the authorities, we find, in the record testimony that casing-head gasoline is "a product that is extracted from natural gas that is freed from oil; it comes out of the casinghead; this is put in an absorption plant, or absorbed with mineral oil and the gasoline condensed, and the gas is put under pressure up as high as 250 pounds, then taken and put under a process to extract the different gasolines after it has been put under pressure." It is apparent that gasoline is a generic term and includes fluids of varying chemical composition and different specific gravities. We consider its use in the amended information and the charge of the court sufficiently accurate to include gasoline manufactured from casing-head gas. Additionally, it may be noted that the defendant appears not to have objected to and excepted either to this proof or the instruction of the court in reliance on this ground.

Affidavits of several of the jurors were presented to the trial court to the effect that the jury reached its determination of the value of the property taken by adopting a quotient verdict relative to that question. This is assigned and insisted upon as error. But counsel have evidently overlooked the effect of the previous decisions of this court, Pullman Co. v. Finley, 20 Wyo. 456, 125 Pac. 380, and Morris

v. State, 39 Wyo. 157, 270 Pac. 415, which have disposed of the point adversely to his contention.

Finally, it is urged that there was no sufficient proof of ownership of the property taken or of non-consent on the part of the owner thereof. These points were not assigned as error and, under previous decisions of the court, are waived. See State v. Crump, 35 Wyo. 41, 246 Pac. 241; Paul v. Harris, 40 Wyo. 261, 276 Pac. 444; McGinnis v. Beatty, 27 Wyo. 287, 196 Pac. 311. Even if this was not so, there was sufficient proof in the record on the matter of ownership of the stolen gasoline to be regarded by the jury. The Acting General Superintendent of the Midwest Refining Company's gasoline department testified that the pipe line and the products in it were the property of that company. Concerning the suggestion of failure of proof of the owner's non-consent, it is sufficient to point out that in McAdams v. State, 23 Wyo. 294, 149 Pac. 550, 552, it is declared to be the rule that ''in larceny where, as here, the facts in evidence warrant the reasonable inference that the property was taken without the consent of the owner a conviction will not be set aside for want of direct proof of such fact.''

The record establishes that the officers of the company aforesaid which owned the property taken, as soon as possible, stopped the defendants from continuing their appropriation of the gasoline from the pipe line and deputies of the Sheriff of Natrona County, in their presence, forthwith took the defendants into custody. These facts, it would seem, would warrant the ''reasonable inference that the property was taken without the consent of the owner.'' The judgment should be affirmed.

*Affirmed.*

KIMBALL, Ch. J., and BLUME, J., concur.