Santiago Salcido LOPEZ, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 5637.

Supreme Court of Wyoming.

April 19, 1982.

Leonard D. Munker and Sylvia Lee
Hackl, Wyoming Public Defender Program,
Cheyenne, Michael H. Schilling, Wyoming
Public Defender Program, Laramie, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div.;
Allen C. Johnson, Sr. Asst. Atty. Gen., Michael L. Hubbard, Asst. Atty. Gen., Cheyenne, for appellee.

Before ROSE, C. J., RAPER, THOMAS,
ROONEY and BROWN, JJ.

BROWN, Justice.

Appellant appeals from a conviction of
burglary, in violation of § 6–7–201(a)(i),
W.S.1977. In the trial court appellant unsuccessfully sought to suppress a rifle seized
from his vehicle at the time of arrest. Appellant argued in the trial court and on
appeal that the evidence was neither discovered through a search incident to a lawful
arrest nor seized pursuant to a search warrant. He urges the same issue on appeal.

We will affirm.

On July 1, 1981, appellant went to a
combination bar-gas station. Mrs. Ander-

son, the proprietor of the Ucross Bar, pumped the gas. Mrs. Anderson noted that the man who bought the gas was approximately 5'6", of Mexican descent, and was wearing a bright orange T-shirt. She also observed that the car was an older car with a murky brown color, that it had no license plates and carried only a Casper dealer's sticker. The man asked directions to Sheridan, and then drove out of town towards Sheridan.

Mrs. Anderson closed the bar and drove home. Five or six minutes later, she drove by the bar and observed the murky brown car parked in the dark. She drove to a trailer house directly behind the bar; she and a Mr. Koop proceeded to the bar. They looked in the windows, and Mrs. Anderson eventually saw a flash of orange. Mr. Koop testified that he saw a person wearing an orange T-shirt crouch behind the bar.

Knowing there were weapons in the bar, they crossed the street to a store where Mrs. Anderson called the sheriff's department. She informed them that someone was in the bar and described the car and the person who had bought gas for it. While she was on the phone, Mr. Koop saw the car speed away from the bar towards Sheridan.

Officer Tim Agnew of the sheriff's department was on patrol that evening. The dispatcher informed him that a tannish-colored older car, with no license plates and a Casper dealer's tag on the rear end, was involved. The dispatcher also relayed the description of a possible suspect, "a small thin Mexican male wearing an orange T-shirt and some sort of wishbone design on the T-shirt." Enroute to Sheridan, Agnew saw a vehicle that matched the dispatcher's description. He began to pursue the vehicle, but could not stop it, so he radioed for assistance.

Jim Drake, a law enforcement officer from the Girls' School, stopped the vehicle about 45 minutes after Mrs. Anderson had called the sheriff's department. A few minutes later, Officer Agnew arrived. Officer Downing also arrived and advised appellant of his *Miranda* rights.

Walking past the vehicle to his patrol car, Officer Agnew saw a crowbar sitting in the front seat of the vehicle. It drew his attention because the dispatcher had told him that Mrs. Anderson thought that the individual had gone through the window. Officer Agnew therefore thought that the crowbar might be evidence. Looking through the window on the passenger's side to get a closer view of the crowbar, he also saw a small, rusty ice pick next to the crowbar. In addition, he observed a rifle on the driver's side floorboard of the car. The rifle was positioned so that it would have been directly under the driver's legs on the floorboard and was in plain sight. Officer Agnew entered the car, made sure the rifle was unloaded, and then placed it on the roof of the car. Appellant was standing to the rear of the vehicle when Officer Agnew observed the rifle. The rifle proved to be stolen from the Ucross Bar, and appellant is contesting its admission into evidence.

We could affirm this matter either on the search incident to arrest or on the plain view doctrine. We will only address the former. Our initial inquiry will be whether law enforcement officers properly stopped appellant.

■ Law enforcement officers need not have probable cause to arrest before they may properly make an investigatory stop. *Cook v. State*, Wyo., 631 P.2d 5 (1981); *Parkhurst v. State*, Wyo., 628 P.2d 1369 (1981); *Rodarte v. City of Riverton*, Wyo., 552 P.2d 1245 (1976). An investigatory stop is sometimes denominated a "Terry"-type stop. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ We must look at the totality of the circumstances to determine what cause is sufficient to allow law enforcement officers to stop a person. Based upon the whole picture, the detaining officers must have a particular and objective basis for suspecting the particular person stopped of criminal activity. *U. S. v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

"The idea that an assessment of the whole picture must yield a particularized

suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, * * *. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.

"The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain commonsense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

"The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. * * *" Id., 449 U.S. at 418, 101 S.Ct. at 695.

In the case here the detaining officers stopped appellant because a burglary had taken place minutes before at the Ucross Bar. Also, within several miles of the scene of the burglary, a police officer observed an automobile speeding towards Sheridan on a remote secondary road. The automobile matched Mrs. Anderson's eyewitness description of the automobile leaving the scene of the burglary. The description of the automobile included the color and age of the car, the fact that it had no license plates, and that it had only a Casper dealer's sticker. The eyewitness also gave the police a description of the individual who had been in the car earlier as being a "small, thin Mexican male wearing an orange T-shirt and some sort of wishbone design on his T-shirt."

The totality of the circumstances shows that the officer had a particular suspicion and an objective basis for suspecting that the person who had just burgled the Ucross Bar was in the automobile. Before a lawful warrantless arrest can be made, the arresting officer must have probable cause to believe that a crime has been committed by the person to be arrested. *Rodarte v. City of Riverton,* supra. After the permissible investigatory stop had been made, police officers could see immediately that appellant matched the description of the suspect given by Mrs. Anderson and they had probable cause to arrest appellant.

In delineating a probable cause standard in criminal cases we said in *Rodarte v. City of Riverton,* supra at 1253, quoting from *Beck v. State of Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964):

"‘ * * * Whether that arrest was constitutionally valid depends in turn upon whether, *at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge* and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 * * *.’"

We also said in *Rodarte* that an arresting officer must have factual knowledge which leads him as a reasonable man to believe that the suspect is committing or has committed a crime, although evidence sufficient to establish guilt is not required. Furthermore, a reasonable man test, applied against a standard as stringent as that applied to magistrates, is also applicable to an arresting officer.

Appellant relies heavily on *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). *Chimel* held that an arresting officer may search the arrestee's person without a search warrant to discover and remove weapons and to seize evidence to prevent its concealment or destruction,

and may search the area "within the immediate control" of the person arrested, meaning the area from which he might gain possession of a weapon or destructible evidence.

The search in *Chimel* was of his home. The court held that the search was unreasonable as extending beyond defendant's person and the area within his immediate control. Since *Chimel*, courts have had difficulty determining exactly what is meant by "within the immediate control" of the person arrested. One line of cases held that, incident to a lawful arrest, officers may search the interior of an automobile after the occupants have been removed.[1] On the other hand, such a search has been held to be constitutionally invalid in other jurisdictions.[2]

The United States Supreme Court noted in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), that "no straightforward rule has emerged from the litigated cases respecting the question * * * of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants." The court recognized that "a single, familiar standard is essential to guide police officers, * * * in the specific circumstances they confront." Id. 395 U.S. at 774, 89 S.Ct. at 2046.

In *New York v. Belton*, supra, the court appears to have established an understandable and workable rule with respect to the search of an automobile incident to a lawful custodial arrest, when it said:

" * * * While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of 'the area within the immediate control the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary item.' *Chimel*, supra [395 U.S.], at 763, 23 L.Ed.2d 685, 89 S.Ct. 2034. In order to establish the workable rule this category of cases requires, we read *Chimel's* definition of the limits of the area that may be searched in light of that generalization. Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Id. 395 U.S. at 774–775, 89 S.Ct. at 2046.

We have found that the officers had probable cause to arrest appellant. We further find that the officers properly searched the interior of appellant's vehicle and justifiably seized the rifle.

Affirmed.

1.  *United States v. Sanders*, 631 F.2d 1309 (8th Cir. 1980), cert. denied, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981); *United States v. Dixon*, 558 F.2d 919 (9th Cir. 1977), cert. denied, 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 764 (1978); *United States v. Frick*, 490 F.2d 666 (5th Cir. 1973), cert. denied, 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974); *Hinkel v. Anchorage*, Alaska, 618 P.2d 1069 (1980), cert. denied, 450 U.S. 1032, 101 S.Ct. 1744, 68 L.Ed.2d 228 (1981).

2.  *United States v. Benson*, 631 F.2d 1336 (8th Cir. 1980); *United States v. Rigales*, 630 F.2d 364 (5th Cir. 1980); *Ulesky v. Florida*, Fla.App., 379 So.2d 121 (1979).