Mario VASQUEZ, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 97–140.

Supreme Court of Wyoming.

Nov. 16, 1999.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

GOLDEN, Justice.

An officer of the Wyoming Highway Patrol arrested Mario Vasquez for driving while under the influence. The officer handcuffed

Vasquez and placed him in the officer's patrol car. After the arrest was completed, another officer saw spent handgun shells in the bed of Vasquez's truck, searched the passenger compartment and discovered cocaine inside the fuse box. Vasquez entered a conditional guilty plea to felony possession of cocaine after the district court denied various motions to suppress an inculpatory statement and evidence discovered during the search of his vehicle. The district court relied on *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which held that the passenger compartment of a vehicle may be searched as a contemporaneous incident to lawful arrest. Today, we must decide whether this motor vehicle search was permissible under the search and seizure provisions of the Wyoming and Federal Constitutions.

We hold that the motor vehicle search was incident to a lawful arrest and, therefore, permitted under the Fourth Amendment of the Federal Constitution, as held in *Belton*. Under an independent analysis of the search and seizure provision, Article 1, Section 4, of our state constitution, we hold that the officer lawfully searched the passenger compartment of Vasquez's vehicle because that search and seizure provision permits a vehicle search for weapons incident to an arrest when reasonable suspicion exists that a vehicle occupant is armed. We hold that the district court correctly denied Vasquez's various motions to suppress and affirm his conviction.

## ISSUES

Vasquez presents these issues for our review:

I. Whether the district court erred when it denied the appellant's motions to suppress all evidence seized because the search of the appellant's truck was illegal?

II. Whether the district court erred when it denied the appellant's motions to suppress the appellant's inadmissible statements to law enforcement?

III. Whether the district court erred when it denied the appellant's motions to

* Chief Justice at time of oral argument; retired November 2, 1998

suppress all evidence seized because the traffic stop of the appellant was illegal?

The State rephrases the issues as:

I. Did the district court err in denying appellant's motion to suppress the cocaine seized during the search of his vehicle?

II. Did the district court err in denying appellant's motion to suppress the statements he made to law enforcement?

## FACTS

On June 16, 1996, at about 7:45 a.m., the Wyoming Highway Patrol received an anonymous REDDI (report every drunk driver immediately) report complaining that a newer model green Chevrolet pickup truck with Colorado plates was weaving all over the road and had almost hit the reporting person's car as it attempted to pass. It was reported that the truck carried three Hispanic males and was traveling northbound on Interstate 25 from the Colorado–Wyoming state line. The highway patrol officer headed in the reported direction and soon spotted a truck matching the description. He followed it and noticed that it was weaving only within its own lane; however, it veered towards another vehicle attempting to pass it. That vehicle swerved to avoid the green truck and, at that point, the officer initiated a stop of the green truck. Vasquez was driving that vehicle and was accompanied by two passengers. He smelled strongly of alcohol; after conducting field sobriety tests on Vasquez, the officer placed Vasquez under arrest for driving while under the influence. Vasquez was handcuffed and placed in the officer's patrol car.

Other officers arrived at the scene and noticed empty cartridges or casings for bullets in the bed and passenger compartment of the pickup truck. The officers removed the passengers from the truck and searched them and the truck for weapons. In a fuse box located on the left side of the steering wheel in front of the driver, the officers found a plastic bag containing a white substance. The officer who opened the fuse box testified he believed it was an ashtray large enough to contain a pistol. Vasquez was taken to jail and processed without having

his rights read to him; however, he was not interrogated at the scene.

During the booking process, the arresting officer asked Vasquez questions about his name, social security number and birthdate in order to fill out a book-in sheet. Vasquez asked a deputy what the charge was against him. The arresting officer told the deputy that Vasquez was charged with driving while under the influence and could later be charged with possession of methamphetamine. Vasquez then stated that it was cocaine, not methamphetamine, and he was responsible for its presence in the truck. The arresting officer then advised Vasquez not to give any more information until he had been read his rights. The arresting officer and the deputy testified that Vasquez was obviously intoxicated and agitated. Upon being informed that Vasquez was under arrest for driving while under the influence, the deputy serving as jail custodian asked Vasquez how much he had to drink. The deputy also asked whether Vasquez had any drugs on his person. Vasquez was never read his *Miranda* rights by the arresting officer.

Later that day, agents from the Division of Criminal Investigation attempted to interview Vasquez but also gave up because he was intoxicated and agitated. Vasquez appeared in court that day on the driving while under the influence charge and plead guilty. He contends he completed documents requesting that counsel be appointed for him; however, the documents were dated the next day, June 17, 1996. Although defense counsel disputed the accuracy of this date at the suppression hearing, that factual issue was not resolved.

The next morning, June 17, 1996, the DCI agents advised Vasquez of his *Miranda* rights and conducted an interview during which Vasquez made inculpatory statements. Vasquez testified that he requested counsel at the beginning of the interview; however, the DCI agents stated that Vasquez did not make this request until late in the interview. On June 17, Vasquez again appeared in court on a possession of cocaine charge. Vasquez moved to suppress his statements and the evidence seized during the warrantless

search of his truck. After a·hearing, the motion was denied and he entered a·conditional guilty plea to the possession charge and filed an appeal. Vasquez served a sentence at the Wyoming Boot Camp in Newcastle. The remainder of his sentence was suspended in favor of two years supervised probation.

## DISCUSSION

### Vehicle Search

#### Standard of Review

When reviewing an order denying a motion to suppress evidence, the findings of the trial court regarding the motion to suppress are binding on this Court unless clearly erroneous. *Neilson v. State*, 599 P.2d 1326, 1330 (Wyo.1979), *cert. denied*, 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980). Whether an unreasonable search or seizure occurred in violation of constitutional rights presents a question of law and is reviewed de novo. *Gronski v. State*, 910 P.2d 561, 563 (Wyo.1996).

#### Federal Constitutional Analysis

Vasquez contends that the warrantless search of his truck was not conducted within the specific boundaries of any exception to the warrant requirement of the state and federal constitutions. The State contends that the district court correctly concluded that the search of the truck and the removal of the fuse box cover were justifiable as a search incident to a lawful arrest. In *Lopez v. State*, 643 P.2d 682 (Wyo.1982), this Court recognized and applied the rule from *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), stating that when a police officer has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. *Lopez*, 643 P.2d at 685. Vasquez contends this search does not meet the requirements of *Belton*, and a state constitutional analysis does not permit this Court to extend *Belton* to these particular facts.

In this case, it was established that after performing field tests upon Vasquez, the ar-

resting officer handcuffed him and placed him in the front passenger's seat of the officer's vehicle. A second officer arrived while the field tests were being performed and stood by the arresting officer's car and later a third officer arrived. Vasquez's two passengers remained seated in the truck, and the second and third officers approached the truck from the rear. Both officers testified they saw two empty gun cartridges or casings in the bed of the truck. Each officer asked the two passengers to step out of the truck, handcuffed them and led them away from the truck and had them kneel on the ground some distance from the truck. The officers then searched the vehicle and discovered the cocaine inside the fuse box.

In *Belton*, a police officer stopped a car for a traffic violation and smelled marijuana. On the floor of the vehicle, he saw an envelope marked "Supergold," a term he associated with marijuana. The officer removed the driver and three passengers, one of whom was Belton, from the car and placed them under arrest. He searched each of the occupants of the car and then searched the car, where he found a black leather jacket in the back seat. He unzipped one of the pockets and discovered cocaine. *Belton*, 453 U.S. at 455–56, 101 S.Ct. at 2861–62. The United States Supreme Court considered these facts in light of the test formulated in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), allowing a search of the "area within the immediate control of the arrestee." *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864. The Court concluded that courts had found no workable definition of this test and stated that

> [w]hen a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority.

*Id.* at 459–60, 101 S.Ct. at 2864.

The Supreme Court determined that a straightforward rule that would eliminate "subtle nuances and hairline distinctions" was required, *Belton*, 453 U.S. at 458, 101 S.Ct. at 2863, and held that the search of the

vehicle was lawful even though the jacket was not accessible to any of the occupants of the car, who could not, therefore, retrieve any weapons from the jacket or destroy any contraband which might be contained therein. The holding in *Belton* is as follows:

> [W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
>
> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.

*Id.* at 460–61, 101 S.Ct. at 2864 (citations and footnotes omitted). *Belton* established that arrest justifies the search of a passenger compartment, including any open or closed container in it, without consideration of the privacy interest, and the validity of the search is not dependent upon the nature of the container. *Id.* This bright-line rule differed from previous decisions by the Supreme Court setting a plethora of complex, fact-driven rules potentially applicable to automobile probable cause searches; searches of containers found during an automobile search; automobile searches incident to arrest; officer safety; inventory; and consent searches, but causing difficulty for law enforcement and often the judiciary to understand when to apply which rule. *Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925); *Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040; *Chambers v. Maroney*, 399 U.S. 42, 47, 90 S.Ct. 1975,

1979, 26 L.Ed.2d 419 (1970); *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973); *Cardwell v. Lewis*, 417 U.S. 583, 591–92, 94 S.Ct. 2464, 2470, 41 L.Ed.2d 325 (1974); *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Pennsylvania v. Mimms*, 434 U.S. 106, 111–12, 98 S.Ct. 330, 333–34, 54 L.Ed.2d 331 (1977); *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).

The plurality decision in *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), decided the same day as *Belton*, illustrates the uncertainty created by the numerous rules for automobile searches. Although factually similar to *Belton* because the occupants were arrested, *Robbins* considered the applicability of the automobile exception in conjunction with the law concerning a closed container search and decided it was unconstitutional during the lawful search of the vehicle to open two packages wrapped in opaque paper and placed in the vehicle's closed luggage compartment. *Id.* at 428–29, 101 S.Ct. at 2847.

The next year, *Robbins* was overruled by *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), when the Court decided that the automobile exception permitted opening closed containers during a warrantless search. The only exception to *Ross* requiring a warrant would be those occasions when, before the search, the police believed that a particular container held evidence. That particular requirement was disposed of in *California v. Acevedo*, 500 U.S. 565, 573–75, 111 S.Ct. 1982, 1988–89, 114 L.Ed.2d 619 (1991).

These decisions resulted in virtually[1] eliminating the "closed container" analysis from automobile exception searches and the "area

---

1. In *Houghton v. State*, 956 P.2d 363, 372 (1998), *cert. granted, Wyoming v. Houghton*, 524 U.S. 983, 119 S.Ct. 31, 141 L.Ed.2d 791 (1998), this Court determined that, under the United States Constitution, the automobile exception did not permit the search of the personal effects of a passenger or guest without probable cause. On April 5, 1999, the United States Supreme Court

reversed this Court's decision, holding that police officers do not violate the Fourth Amendment when they search a passenger's personal belongings inside an automobile that they have probable cause to believe contains contraband. *Wyoming v. Houghton*, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999).

of control" analysis from searches incident to arrest. In doing so, the Court has simplified Fourth Amendment law regarding automobiles, effectively prohibiting only general searches and essentially eliminating the individual's right to the constitutional protection of a judicially-issued warrant for almost all automobile searches.[2] The Supreme Court majority believed it was a reasonable construction of the Fourth Amendment to formulate bright-line rules. Soon, state courts chose to consider whether this lowering of federal constitutional standards was permissible under their own state constitutions.

Wyoming considered *Belton's* application in *Lopez*. A police officer received a report that a tannish-colored older car, with no license places and a Casper dealer's tag on the rear end, had left the scene of a burglary at a bar. *Lopez*, 643 P.2d at 683. He began to pursue the vehicle, but could not stop it. Another officer assisted, and the car was stopped about forty-five minutes later. The driver matched the description of the suspect and was arrested on suspicion of burglary. A search of the car produced a rifle stolen from the bar in plain sight on the floor of the driver's side. *Id.* Lopez challenged the rifle's admission into evidence, and this Court applied the bright-line rule of *Belton*, approvingly noting that "the court appears to have established an understandable and workable rule with respect to the search of an automobile incident to a lawful custodial arrest." *Id.* at 685.

■ The *Lopez* search could have been ruled valid under either a *Chimel* search incident to arrest for a weapon within the arrestee's immediate control or the plain-view doctrine recognized in *Alcala v. State*, 487 P.2d 448, 453 (Wyo.1971), *cert. denied*, 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466 (1972). Nevertheless, it is clear that this

Court deliberately shunned those analyses and chose to recognize the *Belton* rule in response to a federal constitutional challenge because of its ease in application. Vasquez has made that same federal constitutional challenge and, because this Court has previously applied *Belton*, there is no reason not to apply it to the facts of this case in response to this federal constitutional challenge. Under the Federal Constitution, *Belton* permits a search of Vasquez's vehicle, including the fuse box, as a valid search incident to a lawful arrest although Vasquez had been removed from the vehicle, handcuffed, and placed in the patrol car. *Belton*, 453 U.S. at 462–63, 101 S.Ct. at 2865; *accord*, *United States v. Willis*, 37 F.3d 313, 317 (7th Cir.1994); *United States v. Patterson*, 993 F.2d 121, 122–23 (6th Cir.1993); *United States v. Cotton*, 751 F.2d 1146, 1149 (10th Cir.1985); *but see United States v. Vasey*, 834 F.2d 782, 787–88 (9th Cir.1987).

In *Lopez*, this Court did not, however, conduct an independent state constitutional analysis to determine if *Belton* should apply under Article 1, § 4 of the Wyoming Constitution, the search and seizure provision. Vasquez contends this state constitutional provision should be considered as providing greater protection of individual rights and, accordingly, this Court should reject the *Belton* rule either because his arrest and the securing of the other occupants effectively eliminated any threat to the officers which necessitated the search for the suspected handgun, or because the "ash tray" was not a container which the officer was authorized to search.

*State Constitutional Analysis*

The texts of the search and seizure provisions in the Wyoming Constitution and the Federal Constitution are substantially similar

2. Although many would consider the automobile search decisions to be a series of bright-line rules, apparently the Court does not as seen in *Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996), where the Court said:
We have long held that the "touchstone of the Fourth Amendment is reasonableness." Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances.

In applying this test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry.
*Id.* at 421. *Robinette* held that officers do not need to advise a lawfully detained motorist of the right to refuse to consent to an automobile search.

although the Wyoming provision does require an affidavit to secure a warrant.

## Amendment 4
### SECURITY FROM UNWARRANTABLE SEARCH AND SEIZURE

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

### § 4. Security against search and seizure.

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

Wyo. Const. art. 1, § 4.

This Court has stated that the affidavit requirement strengthened the state provision because it creates a permanent record. *State v. Peterson*, 27 Wyo. 185, 204, 194 P. 342, 346 (1920). This Court's recent search and seizure jurisprudence has not distinguished between the two provisions. Vasquez contends that the textual difference and history of the state provision suggest it offers greater protection than that offered by the federal provision. Since the *Belton* bright-line rule was promulgated, the majority of states have followed it usually without addressing applicability under their respective state constitutions. *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896, 905 (1995) (collecting cases). In the state courts that have independently analyzed whether their state provisions provided greater protection, Louisiana, Massachusetts, New Jersey, New York, Nevada, North Dakota, Ohio, Oregon, Pennsylvania, and Washington have not adopted *Belton* while Connecticut, Idaho, Illinois, Iowa, South Dakota, and Wisconsin have.[3] Those courts rejecting *Belton* generally agree that the search incident to arrest exception is permitted when required for the protection of the officer, the preservation of evidence, or when it is relevant to the crime for which defendant is being arrested and is reasonable in light of all the facts. *See White*, 669 A.2d at 906–07. Those courts independently analyzing their state constitutions to determine the permissible scope of an automobile search incident to the arrest of its driver or passengers usually have either a long tradition of such independent analysis or have sufficient constitutional history to permit departing from federal precedent through principled reasoning.

In the case of Wyoming's search and seizure provision, there is little constitutional history available to provide clues as to the framers' intent when drafting it. Further hampering our analysis is the fact that this Court both initiated and then all but abandoned independent analysis of the state constitutional provision during the 1920s and 1930s and began determining search and seizure issues under the Fourth Amendment

---

**3.** Rejecting *Belton*: *State v. Hernandez*, 410 So.2d 1381, 1385 (La.1982); *Commonwealth v. Toole*, 389 Mass. 159, 448 N.E.2d 1264, 1266–68 (1983); *State v. Pierce*, 136 N.J. 184, 642 A.2d 947, 960 (1994); *People v. Blasich*, 73 N.Y.2d 673, 543 N.Y.S.2d 40, 541 N.E.2d 40, 44–45 (1989); *State v. Greenwald*, 109 Nev. 808, 858 P.2d 36, 37 (1993); *State v. Gilberts*, 497 N.W.2d 93, 97 (N.D.1993); *State v. Brown*, 63 Ohio St.3d 349, 588 N.E.2d 113, 114–15 (1992), *cert. denied*, 506 U.S. 862, 113 S.Ct. 182, 121 L.Ed.2d 127 (1992); *State v. Kirsch*, 69 Or.App. 418, 686 P.2d 446, 448–49 (1984); *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896, 908 (1995); *State v. Stroud*, 106 Wash.2d 144, 720 P.2d 436, 440–41 (1986). Utah applies a *"Belton*-type analysis"

because that court has decided that its state constitution provides greater protection than the federal search and seizure provision. *State v. Giron*, 943 P.2d 1114, 1121 (Utah App.1997). Accepting *Belton* under their own state constitution: *State v. Waller*, 223 Conn. 283, 612 A.2d 1189, 1193 (1992); *State v. Charpentier*, 131 Idaho 649, 962 P.2d 1033, 1037 (1998); *People v. Hoskins*, 101 Ill.2d 209, 78 Ill.Dec. 107, 461 N.E.2d 941, 945 (1984), *cert. denied*, 469 U.S. 840, 105 S.Ct. 142, 83 L.Ed.2d 81 (1984); *State v. Sanders*, 312 N.W.2d 534, 539 (Iowa 1981); *State v. Rice*, 327 N.W.2d 128, 131 (S.D.1982); *State v. Fry*, 131 Wis.2d 153, 388 N.W.2d 565, 571 (1986), *cert. denied*, 479 U.S. 989, 107 S.Ct. 583, 93 L.Ed.2d 586 (1986).

with strict adherence to United States Supreme Court decisions. This practice was essentially required in order to comply with the Supreme Court's expansive protection provided to individual rights during the 1960s and 1970s, enforced by the Supreme Court's mandate that states comply with its interpretations of the minimum Fourth Amendment protections offered or have the exclusionary rule imposed. *Mapp v. Ohio*, 367 U.S. 643, 654–55, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961). In the late 1970s and 1980s, the Supreme Court began reducing protection under the Fourth Amendment, producing many fragmented decisions. The bright-line rules of *Belton* and *Ross* eliminated much of the seemingly inconsistent rulings caused by fact-driven analysis and cleared confusion concerning automobile search law for law enforcement and the local judiciary. The shifting precedent of the Supreme Court from restrictive interpretations to *Belton*'s authorization of broad searches freed state courts to return to analyzing these issues under their own constitutions, and leading constitutional authorities soon began urging independent interpretations for state courts.

The issue of whether this Court should consider an independent interpretation of the Wyoming Constitution's search and seizure provision was answered affirmatively with instructions that a litigant must provide a precise, analytically sound approach when advancing an argument to independently interpret the state constitution. *Dworkin v. L.F.P., Inc.*, 839 P.2d 903, 909 (Wyo.1992); *Saldana v. State*, 846 P.2d 604, 621–24 (Wyo. 1993) (Golden, J., concurring). Vasquez analyzes several factors recommended in *Saldana* to advance his argument that the state constitutional provision provides greater protection than its federal counterpart. He points first to textual differences between the state and federal constitutions and constitutional history to justify his greater protection argument.

*Textual Differences*

The Wyoming Constitution, drafted in 1889, was written to include a "declaration of rights" which included many provisions textually either the same or substantially the same as the Federal Constitution as well as many provisions which have no counterpart in the Federal Constitution. Vasquez theorizes that the drafters "declared" existing, natural rights in contrast to the Federal Constitution's bill of rights which confers rights not already in existence. He contends this evidence as well as the difference in the preamble texts of the two documents suggests Wyoming has recognized natural rights, signifying that the framers of the Wyoming Constitution held dearly the notion of individual rights and intended to strongly limit the scope of governmental intrusion into individual rights.

The text of the preamble to the Wyoming Constitution differs from the federal constitutional text by referring to what some commentators identify as "natural rights" of which the Federal Constitution's preamble makes no mention:

> We, the people of the State of Wyoming, grateful to God for our civil, political and religious liberties, and desiring to secure them to ourselves and perpetuate them to our posterity, do ordain and establish this Constitution.

No state constitutional history exists which would lead us to believe that Wyoming initially included individual rights as a strong statement of societal values or because it intended to provide greater protection of individual rights. The most that can be definitely ascertained from the differences in the constitutional histories of the two documents may well be explained by the simple fact that it was the prevailing view that protection of individual rights was considered to be the province of the state and the federal rights acted only upon the federal government, and the Wyoming drafters acted accordingly. *Peterson*, 27 Wyo. at 213, 194 P. at 350. This view prevailed even though the Civil War Amendments were clearly intended to operate on the states, and ultimately this view legally changed because of the 1961 decision of *Mapp v. Ohio*.

The authors of the two foremost treatises on the Wyoming Constitution's history believe that they have discerned an intent by the framers to provide greater protection of citizens' rights. Although the Wyoming Dec-

laration of Rights was passed "without rancorous debate," there is evidence the framers "endorsed the principle of liberal construction of the Declaration of Rights." Robert B. Keiter and Tim Newcomb, The Wyoming State Constitution, A Reference Guide 11–12 (1993).

In the beginning of the century, when the Wyoming Supreme Court was composed of former delegates to the constitutional convention, the court understood this section to protect liberty more stringently than the level of protection provided by the Fourth Amendment of the U.S. Constitution. That early court adopted the equivalent to *Miranda* rights and the exclusionary rule more than fifty years before the federal judiciary followed suit (*Maki v. State*, [18 Wyo. 481, 112 P. 334] (1911)). But now, in the aftermath of the Warren Court's criminal procedure rulings, the Wyoming Supreme Court appears to follow federal precedent and typically treats this provision as offering no greater protection than does the Fourth Amendment.

*Id.* at 35. Liberal construction of state constitutions in the Rocky Mountain Region was the prevailing view. *Id.* at 12 The framers' deep rooted concern for individual rights was demonstrated during a debate at the constitutional convention over whether it was worth the cost to create and support a supreme court. "Lawyer George C. Smith of Rawlins asked: 'what is the matter of a few thousand dollars compared with the rights of life and liberty.'" T.A. Larsen, History of Wyoming 248 (1965). It appears that there was little direct history available to the authors, and they properly resorted to other sources to competently theorize about the framers' intent; however, for our purposes, these textual differences do not assist us one way or another in our determination.

■ Vasquez also contends that the simple fact that Article 1, § 4 has different language from the Fourth Amendment demonstrates an intent to provide greater protection. Again, we have no way of knowing whether this is true, and tend to think that the slight textual difference demonstrates little. Nor do we think that had the provisions been identical, it would demonstrate an intent that the Wyoming provision provide the same protection as the federal provision. *See Sibron v. New York*, 392 U.S. 40, 60–61, 88 S.Ct. 1889, 1901–02, 20 L.Ed.2d 917 (1968); *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967); *People v. Belton*, 55 N.Y.2d 49, 447 N.Y.S.2d 873, 432 N.E.2d 745 (1982) (recognizing that identical provisions do not mean that an independent interpretation is not warranted).

■ In general, the Wyoming Constitution does contain a longer list of rights using more detailed and more specific language that positively declares rights in contrast to the Federal Constitution's use of prohibitory language. The Wyoming Constitution also contains language and rights not provided for in the Federal Constitution. It is a unique document, the supreme law of our state, and this is sufficient reason to decide that it should be at issue whenever an individual believes a constitutionally guaranteed right has been violated. Just as we have done with other state constitutional provisions which have no federal counterpart, we think that Article 1, § 4 deserves and requires the development of sound principles upon which to decide the search and seizure issues arising from state law enforcement action despite its federal counterpart and the activity it generates for the United States Supreme Court. Development of sound constitutional principles on which to decide these issues may lead to decisions which parallel the United States Supreme Court; may provide greater protection than that Court; or may provide less, in which case the federal law would prevail; but whatever the result, a state constitutional analysis is required unless a party desires to have an issue decided solely under the Federal Constitution.

When a state court independently analyzes a state constitutional provision which has a federal counterpart, it can address the state issue first; or first decide whether the claim fails under the Federal Constitution before addressing the state issue; or decide that resolution of the state issue will always parallel the Fourth Amendment decisions.[4] Our

4. "There are several general models for analyz-

ing and applying the rights provisions in state

decision requiring an independent analysis upon development of sound constitutional principles would obviously not be workable under the third choice, and the second choice, or interstitial approach, is often criticized as result-oriented. We do not think this would necessarily have to be the case; however, the first approach best suits our decision that we must further develop our own constitutional principles under the state provision by consideration of constitutional theory appropriate to this state.

■ Having decided that the Wyoming Constitution's declaration that people "be secure in their persons, houses, papers and effects against unreasonable searches and seizures" requires an independent interpretation regardless of its similarities to or differences from the Federal Constitution, we must review this Court's past decisions on the provisions in order to analyze the permissible scope of searches, including a warrantless, automobile search.

■ Before examining those decisions, however, we must first address *Perry v. State*, an opinion, later withdrawn, in which a majority of this Court ruled that the Wyoming Constitution's search and seizure provision, Article 1, § 4, did not permit this Court to follow the *Belton* rule. *Perry v. State*, 821 P.2d 1273 (Wyo.1991), *withdrawn, Perry v. State*, 821 P.2d 1284 (Wyo.1992). Because *Perry* was withdrawn, we hold that *Perry* has no precedential value. We would also point out that shortly after *Perry* was withdrawn and before the issue was raised again, this Court ruled that state constitutional issues would only be decided by a precise, analytically sound approach and advised litigants that unless they advanced such an argument to independently interpret the state constitution, this Court would refuse to

consider the alleged error. *Dworkin*, 839 P.2d at 909; *Saldana*, 846 P.2d at 621–24 (Golden, J., concurring). The criteria listed in *Saldana* are part of an analytically sound approach to developing our own constitutional theory concerning the rights declared in the Wyoming Constitution, and litigants need not restrict their analysis to distinguishing between the state and federal constitutions.

*Prior Interpretations*

Beginning in 1920, this Court decided search and seizure cases under the state provision with great discussion of similar decisions by the United State Supreme Court and other state courts. *State v. Peterson*, 27 Wyo. 185, 194 P. 342 (1920). It was often noted in various ways that adoption of this amendment was not an idle ceremony but the cornerstone of constitutions:

This is the provision of the Constitution against unreasonable search and seizure which was adopted in England to protect against the wrongs which had arisen under what was called "General Warrants," was adopted as the Fourth Amendment of the Constitution of the United States, and appears in all state constitutions in slightly varying language.

*Id.* at 197, 194 P. at 344–45. Our early decisions understood it to represent "fundamental props of English and American liberty of the individual citizen and to be most sacredly observed" and meant to restrain the legislature from enacting statutes allowing unreasonable search and seizures; to operate upon executives to forbid enforcement; and upon the judiciary to denounce as unlawful any unreasonable search and seizure. *Id.* at 198, 194 P. at 345. This Court said, however, that

constitutions. The primacy model views the 'state constitution as an independent source of rights and relies on it as the fundamental law.' The interstitial model recognizes the rights afforded by the United States Constitution as minimal guarantees and seeks to ascertain if those federal protections are supplemented or enhanced by state constitutional provisions. The dual sovereignty model evaluates the applicable rights in both state and federal constitutions in the context of each case. The lockstep model is premised on the proposition that a state constitu-

tional provision with an analogous federal counterpart should be construed precisely the same way. Accordingly, '[u]nder the lockstep formulation, changes or clarifications of federal law by the United States Supreme Court lead to parallel changes in state constitutional law.' " Randy J. Holland, *State Constitutions: Purpose and Function*, 69 Temp. L.Rev. 989, 1004 (Fall 1996) (footnotes omitted). *See also*, Robert B. Keiter, *An Essay on Wyoming Constitutional Interpretation*, 21 Land and Water L.Rev. 527, 541–550 (1986).

Section 4 of Article 1 of our Constitution must necessarily be construed in the light of the immemorial usages in connection with the rightful arrest of a defendant. In such cases the right of seizure of certain property is incidental to the right of arrest.... The law is well settled that an officer has the right to search the party arrested and take from his person and from his possession property reasonably believed to be connected to the crime....

*Wiggin v. State*, 28 Wyo. 480, 491, 206 P. 373, 376 (1922). In *Wiggin*, this Court probed the parameters of this exception, ultimately concluding that it need not decide the issue; however, it outlined the argument as:

> The case before us suggests, however, the difficulty encountered by the courts in construing the constitutional provisions above quoted, so as to leave on the one hand, unimpaired the force and vigor thereof, and on the other hand not abrogate the immemorial rights exercised in connection with lawful arrests.

*Id.* at 494, 206 P. at 377. The limitations of the exception with regard to the search of the arrested person were explained in *Roose v. State*, 759 P.2d 478, 482 (Wyo.1988) (citing *Chimel v. California*, 395 U.S. at 762–63, 89 S.Ct. at 2040).

The next few decisions indicated that this Court remained willing to recognize exceptions to the search warrant requirement, allowing the seizure of property plainly in view in an open field away from the home of defendant who had been lawfully arrested upon probable cause. *State v. George*, 32 Wyo. 223, 239, 231 P. 683, 688 (1924). This Court also did not consider that the provision's safeguards would be compromised by ruling a violation of the provision was harmless error as happened in *State v. Crump*, 35 Wyo. 41, 51, 246 P. 241, 244 (1926). Crump claimed that it was reversible error to admit evidence gained from an illegal search, but this Court determined that, where there had not been an adequate objection to the admission and the defendant had testified and admitted his possession of illegal liquor, the violation would be considered harmless. *Id.* at 51, 246 P. at 244. Those rulings issued from a standard of review that only unrea-

sonable searches are forbidden, and whether or not a search is reasonable is a question of law to be decided from all the circumstances of a case whether the search was with or without a warrant. *George*, 32 Wyo. at 239, 231 P. at 688. This Court did consider prosecutorial contentions that a warrantless search was proper because the citizen had not resisted it as threatening the constitutional safeguards and firmly disposed of the idea that a citizen's peaceful submission to a search amounted to a consent. We adopted a clear and convincing standard, defined consent as "really voluntary and with a desire to invite search, and not done merely to avoid resistance," and then threw out the conviction. *Tobin v. State*, 36 Wyo. 368, 374, 255 P. 788, 789 (1927).

Several of this Court's last decisions independently interpreting the search and seizure provision arose from violations of the federal constitutional prohibition against sale and transport of alcohol. The result of that interpretation was recognition that the exceptions to the warrant requirement extended to automobiles. We decided that a search of an automobile without a warrant cannot be said to be unreasonable under all circumstances, and specifically allowed automobile searches when there is probable cause for believing that a vehicle is carrying contraband or illegal goods and searches incidental to lawful arrest. *State v. Kelly*, 38 Wyo. 455, 459–60, 268 P. 571, 572 (1928); *State v. Young*, 40 Wyo. 508, 281 P. 17 (1929); *State v. Munger*, 43 Wyo. 404, 408, 4 P.2d 1094, 1095 (1931). *Munger* recognized that *Wiggin* authorized a search incident to a lawful arrest but ruled the defendant's arrest was unlawful and reversed his conviction without comment about the permissible scope of an automobile search incident to arrest. *Munger*, 43 Wyo. at 409, 4 P.2d at 1095. *Kelly*, for the first time, recognized that automobiles were granted less protection than homes from warrantless searches under the Federal Constitution, but held that probable cause must justify a warrantless automobile search. *Kelly*, 38 Wyo. at 458, 268 P. at 572. That distinction was again discussed in *Gilkison v. State*, 404 P.2d 755 (Wyo.1965), when we confirmed the constitutionality of a game and fish statute allowing warrantless automo-

bile searches upon probable cause, noting that:

> The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.

*Gilkison,* 404 P.2d at 757–758.

Without specifying whether the claim was that the state or the federal provision had been violated, the court's next cases clarified that the court followed its early decisions in permitting warrantless automobile searches which are reasonable under all of the circumstances and followed the United States Supreme Court decisions that, in these cases, it did not have to consider whether it is practical to procure a search warrant. *Whiteley v. State,* 418 P.2d 164, 168 (Wyo.1966); *Belondon v. City of Casper,* 456 P.2d 238, 241 (Wyo.1969), *cert. denied,* 398 U.S. 927, 90 S.Ct. 1815, 26 L.Ed.2d 89 (1970). Whiteley was stopped and arrested for burglary. After the arrest, his car was searched and several items related to the burglary were recovered. He appealed, claiming the search required a warrant, and we upheld it as a permissible warrantless automobile search incident to arrest without discussion of its scope. *Whiteley,* 418 P.2d at 166.[5]

It was not until 1979 that this Court recognized the federal rationale that the inherent mobility of automobiles as well as a diminished expectation of privacy involved in the use and regulation of automobiles allowed disparate treatment of automobiles as compared to other property. *Neilson v. State,* 599 P.2d 1326, 1330–31 (Wyo.1979). In *Parkhurst v. State,* 628 P.2d 1369 (Wyo.1981), *cert. denied,* 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981), without discussion, this Court held that the provision had a standing requirement which must be met as well as a requirement that the claimant must have had a

legitimate expectation of privacy in the place searched. *Parkhurst* decided that a car owner and a passenger had standing and legitimate expectations of privacy in a vehicle and its trunk sufficient to permit challenge to the search. *Id.* at 1374.

These past decisions establish that Article 1, § 4 allows searches incident to arrest and can be said to allow automobile searches because arrestees had possession of it, and the arrest authorizes law enforcement to search it for evidence related to the crime. *Wiggin,* 28 Wyo. at 491, 206 P. at 376. The provision requires, however, that searches be reasonable under all of the circumstances. *Kelly,* 38 Wyo. at 460, 268 P. at 572.

In the case of Vasquez, his erratic driving permitted an investigatory stop, and the strong smell of alcohol and failure of field sobriety tests authorized an arrest for driving while under the influence based upon probable cause. *Munger,* 43 Wyo. at 408–09, 4 P.2d at 1095. The characteristics of a driving while under the influence arrest for suspected alcohol intoxication permit a search of the passenger compartment of the vehicle for any intoxicant, alcohol or narcotic, as evidence related to the crime of driving while under the influence.

We have not considered whether, under the state provision, the permissible scope of a search incident to arrest for automobiles includes containers, and the specific question before us is whether the search of the fuse box for evidence related to the crime was reasonable under all of the circumstances. The State contends that *Belton* should be adopted as the rule under the state provision. *Belton* was formulated in answer to the specific question whether any privacy right existed for a vehicle occupant after arrest which justified limiting the permissible scope of a warrantless automobile search and which outweighed the need for national uni-

---

**5.** Besides addressing the search incident to arrest, *Whiteley* discussed whether the arresting officer had probable cause to make the arrest. A justice of the peace issued a warrant for Whiteley's arrest and a state police bulletin issued. The arrest occurred in another county by an officer acting upon that bulletin. This Court determined that the bulletin provided probable

cause for arrest. *Whiteley,* 418 P.2d at 167. In *Whiteley v. Warden, Wyo. State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), the United States Supreme Court held that the bulletin did not provide probable cause for the arrest and ruled the arrest and seizure of the stolen goods were unreasonable under the Fourth Amendment.

formity in a clear set of rules that would aid police. *Belton* clearly offers minimal protection against an unreasonable search and seizure in order to effectively apply to the vast, national citizenry with which the United States Supreme Court must be concerned. Our earliest decisions reveal our willingness to recognize exceptions to the warrant requirement for homes, automobiles, and other property, and implicitly recognize a *Belton*-type search without discussion of privacy interests or other rationale, but *Belton*'s national citizenry rationale does not apply in Wyoming.

The United States Supreme Court and other jurisdictions recognize that the rationale for permitting searches incident to arrest is to prevent the arrestee from reaching weapons or concealing or destroying evidence. *See White*, 669 A.2d at 905. A search incident to arrest under our state provision for these reasons is reasonable. The inherent mobility of automobiles in combination with officer and public safety concerns created when a driver or a passenger is arrested are exigent circumstances weighing in favor of not restricting the scope, timing, or intensity of such a search. In Vasquez's case, as the officers approached the vehicle with two passengers seated in it, shell casings in the back alerted them to the possibility of a small handgun, and an officer testified it was the possibility of the presence of this weapon which led to the search of the vehicle and the fuse box. The shell casings and the presence of two adult passengers presented an officer safety and a public safety concern which permitted a search incident to arrest although Vasquez's arrest had been accomplished and he was secure inside a patrol car. It appears from the record that the passengers were also arrested and, although we are not told, it would seem their arrest created the need for the officers to secure the vehicle if left on the roadside. In this particular case, we believe that the arrest justified a search of the passenger compartment of the vehicle and all containers in it, open or closed, locked or unlocked, for evidence related to the crime and for weapons or contraband which presented an officer or a public safety concern.

Is this result a narrower application than *Belton?* We think so. This result eschews a bright-line rule and maintains a standard that requires a search be reasonable under all of the circumstances as determined by the judiciary, in light of the historical intent of our search and seizure provision. *Peterson*, 27 Wyo. at 204, 194 P. at 345. It will not be common that a search of an automobile incident to arrest will violate that provision, and our decision should not raise new concerns for law enforcement.

### Legality of the Traffic Stop

██ In his next issue, Vasquez contends that the traffic stop made by law enforcement violated his state and federal constitutional rights against unwarranted search and seizure. Vasquez's argument relies on Fourth Amendment decisions and does not advance an argument under the state constitution specific to traffic stops, and we will, therefore, decide this issue under the Fourth Amendment. He contends that the stop was made on the basis of an anonymous tip in violation of *Alabama v. White*, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990).

We held in *McChesney v. State*, 988 P.2d 1071, 1076–78 (Wyo.1999), that, usually, an anonymous REDDI tip, by itself, is not sufficiently reliable to warrant an investigatory stop. In this case, the REDDI tip described the color, make and direction of travel of Vasquez's vehicle, described the occupants, and described its erratic driving. *McChesney* held that "where ... the informant makes no prediction of future behavior indicating 'inside information,' the investigating officer is required to corroborate the tip in some other fashion, usually by observing either a traffic violation or driving indicative of impairment." *Id.* at 1077 (citing *Pinkney v. State*, 666 So.2d 590, 592 (Fla. App. 4 Dist. 1996)).

██ In this case, the officer did observe firsthand an objective manifestation of criminal activity. *Olson v. State*, 698 P.2d 107, 111 (Wyo.1985). "The intrusiveness of a search or seizure will be upheld if it was reasonable under the totality of the circumstances." *Brown v. State*, 944 P.2d 1168,

1172 (Wyo.1997). Here, the officer had received a report of erratic driving by a pickup truck containing three occupants that had veered toward and almost hit the reporting party as it attempted to pass. The officer spotted a truck matching that description and observed it weaving slightly within its own lane. When it veered towards a passing car, the officer had reasonable suspicion of impaired driving ability and initiated a legitimate investigatory stop. We find no federal constitutional violation caused by the traffic stop.

### Denial of Motion to Suppress Statements

Finally, Vasquez contends that the statements he made on June 16 during "booking" procedures were involuntary and obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and asserts that his statements to DCI agents on June 17 were obtained in violation of his right to counsel under the Sixth Amendment to the United States Constitution.

A trial court's ruling on a motion to suppress a statement for involuntariness is reviewed *de novo*. *Simmers v. State*, 943 P.2d 1189, 1194 (Wyo.1997). Factual findings made by a trial court considering a motion to suppress will not be disturbed unless the findings are clearly erroneous. *State v. Evans*, 944 P.2d 1120, 1124 (Wyo. 1997). Because the trial court has the opportunity to hear the evidence and assess the credibility of the witnesses, and to make the necessary inferences, deductions, and conclusions therefrom, the evidence is viewed in the light most favorable to the trial court's determination. *Id.*

Vasquez contends that the "booking" procedure requires defendants to answer questions which violate *Miranda*. We need not address that issue now because this particular statement which he moved to suppress was not in response to an officer's question, but was an unsolicited voluntary remark made by Vasquez after an officer responded to his query regarding the charges against him. *Miranda* warnings require police to inform an accused during custodial interrogation that he may remain silent, that anything said may be used against him in court, and that he is entitled to an attorney, either retained or appointed. *Kolb v. State*, 930 P.2d 1238, 1240 (Wyo. 1996). In determining whether *Miranda* was violated, we focus on whether the defendant was subjected to "custodial interrogation" before he made statements to the officers. *Martinez v. State*, 943 P.2d 1178, 1181 (Wyo.1997). Interrogation is defined as "words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." *Simmers*, 943 P.2d at 1197. "A statement that is not the product of interrogation or compulsion attributable to authorities or some other improper action is voluntary and admissible." *Id.*

Vasquez was in custody at the time he made his incriminating statement regarding the cocaine; however, there is no evidence that interrogation or compulsion by the officers caused him to make it. He asked an officer what the charges against him were; when told the charge was driving while under the influence, but that he might be charged later for possession of methamphetamine, he voluntarily stated that the substance was cocaine. The officer then advised him not to say anything else. The trial court correctly ruled this statement was admissible as a voluntary statement.

Next, Vasquez claims that his appearance in county court on June 16 regarding the driving while under the influence charge invoked his Sixth Amendment right to counsel, and that it extended to the possession charge. Consequently, he contends that the officers were constitutionally barred from interviewing him on June 17 because he did not initiate the interview or waive his right to have counsel present. We will assume that Vasquez properly requested the appointment of counsel. The State contends that the United States Supreme Court has held that the Sixth Amendment right to counsel is offense specific, and cannot be extended to prospective future prosecutions relating to other offenses. *McNeil v. Wisconsin*, 501 U.S. 171, 176, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991). In *McNeil*, the defendant was arrested on a charge of

armed robbery and was represented by a public defender during a bail hearing. The defendant was visited in jail, waived his *Miranda* rights, and then was questioned about other crimes including a murder. He admitted to those crimes and was convicted of them. Pretrial motions to suppress his statements were denied, and the decision was upheld on appeal. The Supreme Court held that McNeil had invoked his Sixth Amendment right to counsel, but that right is offense specific, and it cannot be invoked once for all future prosecutions. *McNeil,* 501 U.S. at 175, 111 S.Ct. at 2207.

 Vasquez invoked a Sixth Amendment right to counsel for the offense of driving while under the influence. That invocation was ineffective for the offense of cocaine possession, and his statements were properly admitted. Moreover, *McNeil* tells us that an invocation of the Sixth Amendment right to counsel does not imply a *Miranda* right to counsel. *Id.* at 177, 111 S.Ct. at 2208. The trial court apparently did not believe Vasquez's testimony that he requested counsel at the beginning of the interview; that is within the trial court's discretion, and his statements were properly admitted.

The conviction is affirmed.

THOMAS, Justice, concurring specially.

I agree that Vasquez's conviction should be affirmed. I do not wish to have my joinder in that result as manifesting, to any degree, any recession from my position articulated in my dissent in *McChesney v. State,* 988 P.2d 1071, (Wyo.1999). I remain steadfast in my view that the anonymous report in this instance would have provided the requisite articulable suspicion to justify an investigatory stop.

I also add a caveat to the choice of pursuing, on an ad hoc basis, an independent state constitutional analysis in instances in which the criminal conduct is proscribed by both state and federal law. Reality is that, because of the action of Congress in adopting strict sentencing guidelines, many violations of the controlled substances statutes are taken to federal court in lieu of state court. The adoption of broader protections under the Wyoming Constitution in such instances can lead to further erosion of State judicial sovereignty in favor of a federalist approach.